Mr. Justice Cox
delivered the opinion of the court.
This is an action brought upon an instrument in the following language :
“$1,000. Jackson, Miss., Nov. 18, 1875.
“ Sixty days after date, we, or either of us, promise to pay to J. and T. Green, or order, one thousand dollars, value received.
“ J. L. Lake, Jr. [seal.]
“ J. Tarbell. [seal.] ”
The question was suggested in the outset, whether this was to be treated as a sealed instrument or a simple contract. The action is brought in debt, which would apply to an instrument bearing either character. It is in evidence that by the law of Mississippi, where this contract was made, this is a sealed instrument, and we have no hesitation in saying that by the law of the District of Columbia it must also be so regarded. Written scrolls have been, from time immemorial, regarded as seals here. For twenty years we have been in the habit of using printed forms of conveyancing for real estate, with printed seals only, and to. hold that these are not seals would be to upset many of the titles created during that time. So we must consider this as sufficiently a seal to make this instrument a specialty, if that be material to the issue involved.
The defence made in this case by Tarbell is, that no part of the consideration for this instrument was received by him, but that he signed it at the request and for the accommodation of the other maker, J. L. Lake, jr.; in other words, that he was simply surety for Lake, and that this fact was known to the payees ; that at the maturity of the note, the payees, without his knowledge or consent, agreed with Lake, the principal, to extend the time for the payment of the note for sixty days, and thereby discharged him, Tarbell, who was simply a surety. The evidence offered at the trial tended to show that the consideration offered for this extension was an agreement to pay interest at the rate of one per cent, a month during the period of the extension. At the *173 trial, parol evidence of these facts was offered, and objected to by the plaintiff on the ground that it tended to contradict the written instrument. In this connection, it may be stated that the question of the admissibility of parol evidence in a case like this will present two aspects ; first, as evidence tending to show that the contract of the debtor with the creditor was that of a surety and not of a principal; or, second, that although the contract of the debtor with the creditor was that of a principal, yet the relation between the two debtors themselves was that of principal and surety, one being an accommodation maker, and having a right to indemnity from the other if he should be called upon’ to pay the debt.
The grounds of objection to this evidence were, that on the face of this instrument it purports to be the obligation of two principal debtors, joint and several; that the creditors have a right to deal with each one of them as a principal debtor ; that' although the creditor may know their relations to each other, yet he may ignore them, inasmuch as they do not concern him, and that no defence can be made by either one of these parties, which is not available to a principal, but is only available to a surety ; that to admit parol evidence tending to show a defence which could only be made by a surety, is to admit parol evidence to vary the contract from what it is expressed to be, or what is imported on the face of the written instrument. It is further argued that it will not do to say that this evidence is offered, not to contradict the written contract between the debtors and the creditor, but simply to show the relation between the two debtors, because that fact is offered to be proved for the very purpose of establishing a different contract relation between the debtors and the creditor from that which appears on the face of the instrument; that it is offering to do in an indirect way what cannot be done directly ; that is, to let in a defence which could only be made if the debtor was contracting expressly as a surety and not as a principal.
In my own judgment, on strict common law principles, this objection was well taken. I think the better commenta *174 tors recognize it as such, and that the older common law authorities tend to sustain the objection. The later authorities, however’ take a different view. A court of equity deals with this matter in a manner different from the common law. A court of equity does not profess to change by parol evidence the written contract between the creditor and the debtor, but it says to the creditor : “ Although you have two principal debtors and may sue either one of them as-a principal, we will not allow you to ignore the relation that exists between those two debtors themselves, or to exercise your rights so as to prejudice one of them. If you know that one of them is simply an obligor or promisor for the* accommodation of the other, and if, by surrendering securities in your hands to the principal debtor, you prejudice the surety as between themselves, we will not allow you to do it. And not only that, but - the surety has a right to call upon us to require you to prosecute your claim against the real debtor, and we will enforce that right and will not allow you to put yourself in an attitude where you cannot enforce it,, by contracting for time with the principal debtor; and if you do that, it shall involve the loss of recourse.” This is upon somewhat the same principle upon which a court of equity will marshal securities where a mortgagee has an encumbrance covering two different pieces of property. In such a case, although he may resort to either, a court of equity will compel him to resort to one first, for the benefit of a junior encumbrancer who can only resort to the other. In course of time, these notions became transplanted from the courts of equity to the common law courts, and the latter came to hold that, what a court of equity would forbid to be done by a creditor, should be a ground of defence to the one of two debtors who occupied the relation of surety for the other, so that they would allow him to plead in bar the action of the creditor in giving time to the one who was,, as between the debtors themselves, the principal. And in order to give effect to this defence, they have gone further and said that parol evidence may be introduced to show the relation between two-or more debtors-; and, in answer to'the *175 objection that this was contradicting the face of the obligation. they have said : “We do not allow the evidence to be-introduced for the purpose óf contradicting the contract between the debtor and the creditor, but simply to show the-relation between the debtors themselves, and that may be shown by parol evidence.”
It seems to me that this is all wrong, as I have already explained ; for what is the use of admitting the evidence for that purpose, unless we go farther and hold that the relation between the debtors is shown for the express purpose of varying the relation between the debtors and the creditors from what it appears to be on the face of the instrument of indebtedness? Nevertheless, it must be admitted that in point of numbers the balance of authority in the State courts is in favor of the admission of this kind of evidence. They have not gone further, however, and held that the evidence may be admitted directly to contradict the obligation between the debtors and the creditor ; but, on the contrary, they have avoided that and expressly disclaimed it, and said that the evidence was admitted simply to control the relation between the debtors themselves.
On the latter question, whether parol evidence can be admitted to show that the contract between the debtors and the creditor differs from what it purports to be on the face of the instrument, the Supreme Court have spoken in one case — Sprigg vs. The Bank of Mount Pleasant, 10 Peters, 266. In that case there was an obligation signed by several parties, in which they all describe themselves expressly as-principals under seal; differing, in that respect, from the present agreement. There, several of the parties undertook to give in evidence that they were sureties only, and were so received and treated by the plaintiffs. Naturally, the question of estoppel presented itself there first. They had signed as principals, and the court held that they were estopped. In that case they offered to show that, although they had signed as principals, their obligation to the creditor was really that of sureties only, but the court said they were estopped by the sealed obligation. But the court went further, and said:
*176 “But admitting that, although the defendant has upon the face of the obligation become bound as principal, yet, a court of equity might allow him to set up that he was only surety, and let him in to all the protections that are usually extended to sureties ; the present case is to be governed by rules applicable to proceedings in courts of law ; and upon this point, the rule seems to be well settled, that where principal and surety are bound jointly and severally to a bond, although there is no express admission on the face of the instrument that all are principals, yet, the surety cannot aver by pleading that he is surety only. In the case of Rees vs. Berrington, 2 Ves. Jun., 542, Lord Loughborough held, that when two-are bound jointly and severally in a bond, they both appear as principals, and the surety cannot aver that he is bound as surety ; but if he could establish that at law, the principle at law is that he has an interest in the condition ; and if the time of payment is extended, that totally defeats the condition, and the consequence is that the surety is released from his engagement. This point is directly adjudged in the case of The People vs. Jansen, 7 Johns., 387. The question there turned entirely upon the pleadings, and the coui’t let in the defence which discharged the surety, upon the sole ground that it appeared upon the face of the bond that the ancestor of the defendant was surety only ; otherwise the defendant would have been estopped by the bond from alleging that he was surety only. But the fact appearing upon the face of the bond, the defence might be set up at law as well as in equity. The case of Paine vs. Packard and Munson, 13 Johns., 174, although the court admitted the surety to set up by plea at law matter in discharge of his liability, is very distinguishable from the present case. That was a suit upon a promissory note, and the court, upon demurrer, sustained a plea interposed by the surety, alleging a special request made to the plaintiff to prosecute the principal and averring a loss of the debt by reason of his neglect to prosecute. The plea in that case was sustained, on the ground that there was no conflict between the note and the averments in the plea. For, says the court, the aver- *177 merits and facts stated in plea are not repugnant or contradictory to the note. That the fact of Packard having' been ■surety only, is fairly to be presumed to have been known to the plaintiff, and he was in law and equity bound to use due diligence against the principal, in order to exonerate the surety.
“ The plea averred that Packard signed the note as surety, ■and the demurrer admitted the facts. Had it appeared upon the face of the note that Packard signed it as principal, there is no reason to conclude that the court would have let in the defence then set up.
“ It could not, in such case, have been said that there was no repugnancy between the averments in the plea and the note, which was the ground upon which the plea was sustained. But this case has not, under any view of it, relaxed the rule with respect to bonds or sealed obligations, which ■are not open to an inquiry into the consideration.”
It is, therefore, asserted by the Supreme Court, in this ■case, that where parties sign an instrument under seal, jointly or jointly and severally, they sign it as principal debtors, and will not be allowed even to aver in pleading that one of them signed as surety. This decision related to the question, between the debtor and the creditor, of the admissibility of proof to show that the relation between them was that of surety when it purported to be that of principal. The cases cited from the States, in the argument, all look to the other question of showing the relation between the two debtors themselves. The question naturally presents itself in what shape was this evidence offered in the ■court below? I think, upon examination, that it goes farther than is warranted even by the decisions from the State ■courts.
The defendant does not confine himself in this case to the ■offer to prove that, as between him and Lake, he was simply an accommodation maker and that Lake was bound to pay the ■debt or indemnify him against loss ; but he goes further and undertakes to prove that, as between him and the creditor, he was simply a surety. Tarbell, the defendant, was sworn *178 as a witness, and was asked by his counsel whether he had-signed the note in the capacity of principal, or as surety for Lake. Now, it will be observed that this note is not the-contract between these two debtors, but the contract between them, jointly and severally, and the creditor — their promise-to pay the creditor so much money. Tarbell was asked whether he signed the note, that is, whether he entered into this contract with the creditor in the character of principal or as surety, and he testified that he signed it on the representation of Lake that he desired the note discounted^ and that he signed as surety for Lake and not as principal; and the counsel proposed to follow that up with evidence that the plaintiff' had knowledge at the time that the note-was signed by Tarbell in the character of surety. Now,, it seems to us that that is evidence to contradict the face of the instrument, and, therefore, coming within the decision of the Supreme Court, and running beyond the decisions in the State courts which have been cited in support of the plea, and that, therefore, it ought to have been excluded. I think the courts are unanimous in excluding the evidence as it was offered, while they are divided as to whether it can be admitted to show the relation between the debtors themselves. I think, therefore, individually, that there was error on this ground in admitting that parol evidence.
But supposing that evidence to have been properly admitted, and that it is not objectionable on the ground already mentioned, the next question is, how far is it competent on other grounds ? The defence, as I have already stated, was,, that an agreement was made with the principal debtor to-extend the time for the payment of this debt without the knowledge or consent of the surety. The evidence is, that the time for the payment of the note was extended to sixty days from its maturity by virtue of an agreement between the plaintiff and Lake, without the knowledge of the defendant Tarbell, and that the only consideration for the respective extensions of said note, first for sixty days, and then indefinitely, was interest at the rate of one per cent, a month *179 paid or to be paid by Lake to the plaintiff", and that he, Lake, did not remember whether said interest was paid at the time said extensions were granted, or after the extensions had expired ; that this agreement for sixty days was made about the time the note became due, that he paid the interest for the sixty days, but is unable to say whether he paid it at the time of the agreement or after the sixty days expired.
Now it is very important that we should know that fact, because, if the interest was paid in .advance for the forbearance, the authorities mostly agree that that is a sufficient consideration for the extension, and inasmuch as the burden is upon the defendant to show a valid agreement between the plaintiff" and the principal debtor for the extension, it is important for him to show that the consideration was paid in advance; and that is not shown by his saying that he either did that or something else, he does not remember which. On the face of this bill of exceptions, we must assume that there is no evidence of the payment in advance and must treat is as if there was simply an agreement to pay the interest at the end of the period of forbearance. The plaintiff alleges that this consideration was usurious, under the law of Mississippi, and that the agreement for the extension was, for that reason void. The law of Mississippi has been put in evidence here, and is found in the Revised Statutes of that State, the law of 1871. It is singularly vague and incomplete. It provides that “ the legal rate of interest on all bonds, notes, accounts, judgments and contracts, shall be six per cent, per annum, but contracts may be made in writing for the payment of a rate of interest as great as ten per cent, per annum [so far the law agrees with ours], and if a greater rate of interest than ten per cent, shall be stipulated for, in any case such excess shall be forfeited, on the plea of the party to be charged therewith.”
We understand this to mean that in the absence of any stipulation as to the rate of interest, it will be fixed at six per cent, and that even a verbal contract for interest at six per cent, is good, but that beyond that rate it is not good; *180 and that a written contract is good for the rate of ten per cent., but, that beyond that it is not good if the facts be pleaded. Whether, when the party stipulates verbally for more than six per per cent., he shall lose the whole or the excess, is a point on which this law is absolutely silent, and we are left to inference, but as to the excess, the agreement must be void. The general rule on this subject, undoubtedly is, that a contract between the creditor and the principal debtor, for forbearance for a limited time, shall be a defence to the surety, but it necessary to show a binding agreement which absolutely ties the hands of the creditor. If the promise is made without any consideration at all, it does not bind him, and it is no defence to the surety. For example, if the creditor simply agrees to extend the date indefinitely on payment of the legal interest, that is no more than he would be entitled to without any agreement ; he receives no new consideration, and such a promise is not binding. It has been held, however, that if the creditor and the principal debtor both agree that the extension shall be for a definite period, the creditor gets some advantage because he has his money secured as an investment for a stipulated time, whereas otherwise, the debtor is at liberty, at any moment, to pay and put the creditor to the trouble of re-investing his money. Again, it is agreed that if interest is paid in advance of the extension, the creditor gets something more than he would be entitled to as a matter of course, and that that sustains the agreement for forbearance. It is further held, by most of the cases (although some hold the other way), that even if usurious interest be paid in advance, that is a sufficient consideration to make the promise binding ; and it is further held in a late case, that if usurious interest be paid for past forbearance, and also in consideration of future forbearance, that will be sufficient consideration, and that the agreement may be availed of by the surety as a defence ; but the general current of authority is, that an agreement to forbear in consideration of an ex-ecutory promise to pay usurious interest in the future for that forbearance is void under the statutes of usury. One *181 or two cases were cited in argument-in which the court said that it did not lie in the mouth of the creditor to set up the illegality of his own agreement ; which is a singular proposition, because it amounts to this : that the creditor is not permitted to show that the agreement which he made is one which he could not enforce, and one which therefore must be void for want of mutuality. This is contrary to the whole current of decisions. I have had occasion to examine the cases cited, and I find that in every one of them the usurious interest was paid in advance, and that it was held that, the creditor having received the full consideration for his promise, it did not lie in his mouth to say that the agreement was void.
In some of the States the law makes the conti’act to pay usurious interest valid to the extent of the legal interest and void as to the excess ; and in two cases cited in argument the court applied that law to the agreement for the extension of the overdue debt. Now, unless the law in express terms required that application, it seems to me there was error, and the court failed to distinguish between the original agreement to pay usurious interest for the forbearance received and this executory contract for extension. The distinction is very plain and simple. If a man receives money which is a legal consideration, and for that consideration promises to do two things, one legal and the other illegal, as, for instance, to pay the principal debt with legal interest, which would be legal, and also to pay a bonus, which would be illegal, there is no reason why he should not be compelled to carry out that part of his agreement which is legal and for which he has received full consideration and more than a full consideration. But if the promise to do two things— one illegal — is not given for money or other value received, but in consideration of another executory promise, such as a promise to give further time, this latter cannot be- enforced by reason of the partial illegality of the promise which was its consideration. In other words the legal part of an undertaking can be enforced if the consideration for it is. • entirely legal, but an undertaking is void if any part of its *182 consideration is illegal. It will be seen, therefore, that there is a wide difference between the original promise to pay a legal debt with legal and illegal interest and a subsequent promise to pay that debt, and also illegal interest,- in consideration of a promise to forbear or extend. In the former case the promise is supposed to be founded upon a legal executed consideration In the latter case the promise to pay is founded upon an executor’s promise to forbear, and this latter promise is vitiated by the partial illegality of the executory promise given as its consideration, and the agreement to forbear is therefore not binding.
Back of this, however, lies still another question. Some of the old books take a distinction between a consideration which is partially illegal and one which is simply partially void. Certain parol promises under the statutes of frauds are void but not illegal. They are not against public policy and are not forbidden. The law simply requires certain evidence to support them and will not sustain actions upon them without it, but if they are properly supported in proof the law will enforce them. But the usury laws originally absolutely prohibited usurious contracts and inflicted penalties upon the receipt of usury and did not allow the party to recover at common law upon a usurious contract either legal interest or principal. It has been suggested that the modern usury laws in the United States do not go so far, but merely make the debt void but not illegal. Now the ground of prohibition in the usury laws is that the contract itself was against public policy, and such contracts are forbidden upon that ground. Our usury laws, although they do not inflict penalties for the receipt of usury, generally do, nevertheless, absolutely prohibit recovery upon contracts for the payment of interest beyond certain limits. This law that-we have here under consideration does that. It does not allow a party, to recover upon a parol contract beyond a certain rate, and even upon a written contract it does not allow any recovery at all beyond ten per cent. Why not ? It must be upon the ground upon which the old statutes were based, that it would be oppressive, and that it is against *183 public policy to allow such recovery ; and, if so, my judgment is, that even these laws are to be considered as declaring such ■contracts as not only void but illegal.
But after all, the distinction is one without a great deal •of difference. Supposing the consideration to be one partially void, and not partially illegal, there are intimations in -some of the very old authorities (in cases found in Croke’s Elizabeth — as far back as that), that if a consideration is partly void, and the void part is simply frivolous and worthless, the valid consideration will still sustain the contract; but there is a series of cases holding that where the contract is an entire promise to do two things, and it is void as to one part, and that an essential part of the consideration, it is to be treated as an entire obligation, and the invalidity is .a defence.
In the present case it will be observed that the promise in -consideration of the forbearance, was not exactly a promise to do two distinct things, one legal and the other illegal, but an entire promise to pay interest at the rate of one per cent, a month. It was an entire promise, and the promise of forbearance was based upon the whole of this consideration. And if .as to one entire half of that promise it is to be considered void — I mean the promise of the debtor — in my judgment the promise of forbearance was void also for want of ■mutuality. If the courts should say that the obligee was bound to give this forbearance, and yet could Only recover one-half of the interest promised to be paid, they would ■change his contract entirely, because the promise to forbear was based entirely upon the promise to pay twelve per cent, per annum — one per cent, a month ; and the court is not at liberty to change that contract.
Nor does it make any difference that, at the expiration of the period of forbearance, the usury was actually paid by the debtor.
The whole question in the case is whether the obligee was .at any time, bound under the contract for forbearance, not to bring suit on this instrument. If not, then that gives no ■defence to the surety. But, according to the views I have *184 expressed, there was no time from the maturity of this note to the institution of this suit, when the creditor was not at liberty to bring this suit or was under obligation to forbear-That was the state of facts during the period of the extension, and the subsequent payment of the usui’ious interest,, could not change that state of facts. At most, it was a voluntary payment which he was not bound to make, for a voluntary indulgence which the creditor might have withheld -
In our judgment, therefore, the evidence which was offered did not tend to establish a valid and binding contract to-forbear, according to the terms of this asserted agreement,, and it was, therefore, even if proved, no defence to the alleged surety against the creditor. A new trial is therefore-ordered.
Mr. Justice James :
While concurring in the conclusion just announced, I have a very little to add to what has been said, and that is upon the question of admitting parol testimony to vary such a, written contract as we have in this case.
, It is well settled that where the contract shows on the face-of it that a party has contracted only as surety, his contract cannot be altered by the creditor, and if the latter by a binding agreement extends the time of the principal debtor, the liability of the surety is at an end. But it is said, and some of the cases cited support the doctrine, that even when the surety has placed himself on the face of the contract in the position of principal, he may still show by parol proof that as a matter of fact his assumption was that of surety only, and that whenever this can be shown, any extension of time to the principal debtor has the same effect. But. the cases are by no means harmonious upon this question. I, however, conceive the true principle will be found to be-laid down in a case cited from Massachusetts.* In that case the party who appeared on the contract as a principal was allowed to show that as matter of fact he bore to the other debtor the relation of surety ; that the creditor had extended the time of the principal; that the latter had become insol *185 vent, and that the surety had actually been damaged by the extension of time. That was a purely equitable defence, and I think it was the right view to take of the matter. In my opinion, when such a case comes before a court of law, the defendant ought not to be permitted to alter by parol testimony the terms of the written contract upon the face of which he appears as principal, unless he is prepared to show that the creditor’s extension of time to the real principal has been an actual injury to him as surety. This is as far as a court of equity would go, and in my view it is as far as a court of law ought to go. The defendant in the case before us has shown that there was an extension of time, but we ought not to presume that this mere .extension has been an injury to him. It does not appear, as a matter of proof, that the principal debtor was insolvent, or that the defendant, as his surety, was in any way injured. We may surmise that he was, and we have been told that he was, but the proof does not show it.
I am aware that there are cases, supported by very high authority, which hold a different doctrine, and declare the surety, in such cases as this which we have before us, discharged even where no injury to him is shown to have resulted from the extension of time, but just because the cases are not harmonious upon the subject, I feel myself free to follow those which,' in my opinion, lay down the true doctrine ; and that is, that the principle is carried far enough in a court of law when it is carried as far .as a court of equity would carry it. In all the rest of the reasoning of my brother Cox I fully concur. I do not think this contract for extension was binding upon the plaintiff even if it be permitted to be shown.

Carpenter vs. King, 9 Metcf., 511.