Richard A. BURGESS, Appellant,

v.

SQUARE 3324 HAMPSHIRE GARDENS APARTMENTS, INC., Appellee.

No. 96–CV–117.

District of Columbia Court of Appeals.

Argued Jan. 14, 1997.

Decided April 3, 1997.

Richard A. Burgess, Jr., pro se.

Michael P. Broderick, Silver Spring, MD, for appellee.

Before FERREN, STEADMAN and REID, Associate Judges.

STEADMAN, Associate Judge:

The only issue in this appeal is whether the proprietary lease between appellant Richard Burgess and appellee Square 3324 Hampshire Gardens Apartments, Inc. ("Hampshire Gardens"), a housing co-operative, is an "instrument under seal" within the meaning of D.C.Code § 12–301(6) (1995), thereby entitling Burgess to a twelve-year statute of limitations on his breach of contract claim. Because the trial court erred in concluding that the proprietary lease was not an "instrument under seal" for § 12–301(6) purposes, we reverse.

## I.

The proprietary lease at issue is a four-page printed document entered into by the parties on March 19, 1974. After reciting the substantive provisions of the agreement, the lease concludes with the following attestation clause:

IN WITNESS WHEREOF, on the day and year first hereinbefore written, SQUARE 3324 HAMPSHIRE GARDENS APARTMENTS, INC., has caused these presents to be signed in its corporate name by its President and its corporate seal to be hereunto affixed, attested by its Secretary and the Lessee has hereunto set his hand and seal.

Following this clause are the signatures of the then President and Secretary of Hampshire Gardens and the signature of Burgess. Following Burgess' signature the word "Seal" appears in parenthesis. Although we cannot tell from the copy of the lease provided to this court whether the corporate seal was actually affixed to the lease, both of the parties assert in their briefs on appeal that it was, and for purposes of this appeal we assume that to be the case.

Because a provision of the lease allowed the lessee to sublet an apartment with the approval of the co-operative's Board of Directors, Burgess never occupied his one bedroom apartment, but instead subleased it to a series of tenants from the date of purchase until September 1989. In October 1981, the Board amended the co-operative's bylaws to require that seventy-five percent of the apartments be occupied by their owners. In October 1983, the Board again amended the bylaws, this time raising the owner occupancy requirement to ninety percent. Burgess admittedly became aware of these amendments sometime in 1984. Because it was Burgess' understanding that the Board would not approve a new sublessee following the departure of his last tenant, in September 1989 Burgess placed his apartment on the market, and ultimately sold it on February 7, 1992.

On February 6, 1995 Burgess filed this *pro se* lawsuit alleging that Hampshire Gardens' 1981 and 1983 amendments to the bylaws breached the proprietary lease.[1] Following discovery, Hampshire Gardens moved for summary judgment on the ground that Burgess' claim was barred by the three year statute of limitations for contract actions contained in D.C.Code § 12–301(7) (1995). Burgess opposed summary judgment, asserting that the proprietary lease was an "instrument under seal" within the meaning of D.C.Code § 12–301(6) (1995), and that the applicable statute of limitations was therefore twelve years instead of three. The trial court granted summary judgment holding that Burgess had "offer[ed] no evidence that the parties intended the subject lease to be under seal," and this appeal followed.

## II.

In the District of Columbia, the statute of limitations for contract actions is three years, while the statute of limitations for actions brought on sealed instruments is twelve years. D.C.Code § 12–301(6), (7) (1995); *Doolin v. Environmental Power Ltd.*, 360 A.2d 493, 495 n. 2 (D.C.1976); *Ramey v.*

---

1. Burgess also alleged that Hampshire Gardens damaged his apartment by failing to make necessary repairs and negligently making repairs in the spring of 1990. The trial court granted Hampshire Gardens' motion for summary judg-ment on this claim holding that it was barred by the applicable three year statute of limitations, D.C.Code § 12–301(3) (1995). Burgess does not challenge this ruling on appeal.

*Burrascano,* 324 A.2d 687, 687 (D.C.1974) (per curiam).[2] In this appeal the parties do not dispute that the cause of action accrued when Burgess first learned of the bylaw amendments in 1984. Thus, the viability of this lawsuit based on an alleged breach of the proprietary lease turns on whether the three year statute of limitations for breach of contract or the more generous twelve year statute of limitations for sealed instruments applies.

In its order granting summary judgment for Hampshire Gardens, the trial court relied almost exclusively on our recent decision in *Huntley v. Bortolussi,* 667 A.2d 1362 (D.C. 1995). There we considered whether a suit brought on an unsealed promissory note acknowledged in and secured by a contemporaneously executed and sealed deed of trust constituted an action on "an instrument under seal" for § 12–301(6) purposes. *Id.* at 1362–63. We held that the twelve year statute of limitations did not apply because the promissory note and a subsequent extension were not under seal, and the sealed deed of trust did not contain "an independent undertaking or covenant to pay the indebtedness." *Id.* at 1364–65. By way of closing we noted that

> [c]ourts have been reluctant to declare a document to be sealed in the absence of evidence that the parties intended it to be under seal. Even the appearance of the word "seal" and the impression of the corporate seal on a document has been held insufficient to create a sealed document. *See President and Directors of Georgetown College v. Madden,* 505 F.Supp. 557, 587 [ (D.Md.1980) ], *aff'd,* 660 F.2d 91, 96 (4th Cir.1981) [ (per curiam) ]. Here there is no seal on the note or the extension document. Moreover, the record contains no evidence that the parties intended the note or the extension of the note to be a sealed instrument.

**2.** The statute provides in relevant part:

> Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:
>
> . . .

*Id.* at 1365. Although this discussion was not necessary to the result in *Huntley,* and is therefore technically dicta, *see Umana v. Swidler & Berlin, Chartered,* 669 A.2d 717, 720 n. 9 (D.C.1995), it is an accurate statement of the law. *Madden,* the case cited in *Huntley,* did indeed hold that the appearance of the word "seal" and the impression of corporate seals on a document was insufficient to create a sealed instrument, *Madden, supra,* 505 F.Supp. at 587, but the facts of *Madden* are significantly different from those here.

In *Madden* the document at issue was a construction contract between two corporate entities. *Id.* at 581–82. The only indication that the contract was intended to be under seal was the presence of "(Seal)" above the signatures of the corporate officers and the impression of two corporate seals. *Id.* at 582–83 & n. 49. Because the court and parties disagreed over whether District of Columbia or Maryland law governed, *id.* at 581, the court conducted an extensive survey of both District of Columbia and Maryland caselaw as well as a number of secondary sources, *id.* at 581–87. The court concluded:

> While no case appears to have decided the question of whether, for purposes of determining the applicable limitations period, the use of the word "(Seal)" together with the impression of corporate seals makes a contract a sealed instrument, *in the absence of a clause in the body of the contract regarding the sealed nature of the contract,* it would appear that such combined use of the word "(Seal)" and of such impressions should be considered insufficient by themselves to manifest an intent to render the contract under seal, particularly where such use of the word and of such impressions would serve no purpose other than to extend the statute of limitations.

*Id.* at 587 (emphasis added).

It was on the basis of *Huntley* and *Madden* that the trial court concluded that be-

> (6) on an executor's or administrator's bond—5 years; on any other bond or single bill, covenant, or other instrument under seal—12 years;
> (7) on a simple contract, express or implied—3 years;
>
> D.C.Code § 12–301 (1995).

cause Burgess "merely ... signed his name next to a preprinted word 'Seal' " and offered "no evidence that the parties intended the subject lease to be under seal" the lease was not an instrument under seal and the twelve year statute of limitations was inapplicable. However, in so doing the trial court overlooked a number of cases binding in this jurisdiction under *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971) that are distinguishable from the facts of *Huntley* and *Madden* and controlling on the facts of this case.

■ It is true that the presence of a corporate seal may not by itself make a document an instrument under seal for § 12–301(6) purposes. *Simonson v. International Bank of Washington,* 114 U.S.App. D.C. 160, 160, 312 F.2d 887, 887 (1963) (per curiam); *Sigler v. Mount Vernon Bottling Co.,* 158 F.Supp. 234, 235–36 (D.D.C.), *aff'd,* 104 U.S.App. D.C. 260, 261–62, 261 F.2d 378, 379–80 (1958) (per curiam). *See also A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.,* 314 U.S.App. D.C. 122, 135, 62 F.3d 1454, 1467 (1995); *Fox–Greenwald Sheet Metal Co. v. Markowitz Bros., Inc.,* 147 U.S.App. D.C. 14, 25 n. 68, 452 F.2d 1346, 1357 n. 68 (1971). That is the case because corporate seals are routinely employed "for identification and as a mark of genuineness," a use which does not necessarily evince an intention to create an instrument under seal. *Sigler, supra,* 158 F.Supp. at 236, 104 U.S.App. D.C. at 262, 261 F.2d at 380. *See also Fox–Greenwald, supra,* 147 U.S.App. D.C. at 25 n. 68, 452 F.2d at 1357 n. 68. Thus, in order for a document to be an instrument under seal for statute of limitations purposes, something more than a corporate seal, such as, for example, a recitation that the document is "signed and sealed," is required. *See Sigler, supra,* 158 F.Supp. at 235–36, 104 U.S.App. D.C. at 261–62, 261 F.2d at 380. *See also A.I. Trade, supra,* 314 U.S.App. D.C. at 135, 62 F.3d at 1467.

■ This is precisely what is present in the case before us. The proprietary lease here contains an extensive attestation clause, quoted above, which expressly states that in witness of the document, the parties are, on the part of the corporation, affixing its corporate seal, and, on the part of the lessee,

setting his hand and seal. Furthermore, the document at issue is a formal, printed document, headed in Gothic letters "Hampshire Gardens" and "Proprietary Lease," and governing a major legal transaction; *viz.,* the lease of real property for an initial term of 55 years and renewable by the lessee for successive terms of 100 years.

■ There is no requirement that proof of the parties' intent to create a sealed instrument be proved by extrinsic evidence. Our precedent is quite to the contrary. In *Harrod v. Kelly Adjustment Co.,* 179 A.2d 431, 432 (D.C.1962) the appellant sought to avoid the twelve year statute of limitations on a contract for the sale of a watch by claiming ignorance of the effect of a sealed instrument. There the contract prominently stated "witness my hand and seal" and the word "seal" in parenthesis appeared opposite the signature. *Id.* The court rejected his argument holding that

[a]ppellant's ignorance of the seal's significance and his avowed lack of actual intent to execute an agreement of such dignity do not determine the character of the instrument; whatever reservations he may have had then are unavailing now. In deciding the issue the court is concerned not with a maker's undisclosed intent but with that expressed or manifested on the paper under examination. And as the word "seal" in parenthesis is in common use as a seal, its presence upon an instrument in the usual place of a seal, opposite the signature, undoubtedly evinces an intention to make the instrument a sealed instrument, which should be held conclusive by the court, in the absence of other indications to the contrary appearing on the face of the instrument itself.

*Id.* Thus, a proper determination of whether a document is under seal is limited in the first instance to an examination of the face of the document itself. *Id. See also Sigler, supra,* 158 F.Supp. at 235 ("Where a seal is used the intention of the maker is controlling and is to be determined by the Court from an examination of the instrument itself.").

Indeed, in the case of an individual, in contrast to a corporation, we have held that

the presence of the word "seal" next to an individual's signature is, standing alone, sufficient to create a sealed instrument entitled to the twelve-year statute of limitations. In *Phillips v. A & C Adjusters, Inc.*, 213 A.2d 586, 586 (D.C.1965) we confronted a contract for the sale of an automobile where there was "no recitation in the contract that it is signed and sealed by appellant, and no indication in the body of the contract that it is intended to be a sealed instrument;" however, "after appellant's signature, there is the printed word '(Seal)'." We concluded that "[i]n the light of *Wells v. Alropa Corp.*, 65 App. D.C. 281, 82 F.2d 887 (1936), we must hold that the contract was a sealed instrument and that the twelve year limitation is applicable." *Id.* at 586–87. In *Wells,* the D.C. Circuit considered a promissory note where the only indication that it was a sealed instrument was the word "Seal" printed to the right of the signature. 65 App. D.C. at 281–82, 82 F.2d at 887–88. There the court relied on *Green v. Lake,* 13 D.C. (2 Mackey) 162, 172 (1882) to hold that "where a person signs his name next to the printed seal, he adopts the same as his seal, and this prevails whether or not in the body of the instrument are contained additional words 'Witness my hand and seal,' or 'signed and sealed.'" *Id. See also Amidon v. Amidon,* 280 A.2d 82, 84 (D.C.1971) (noting but not deciding issue of whether the word "seal" typed below signatures made a separation agreement a sealed instrument for § 12–301(6) purposes). We have even held that where an individual signed a contract for services under seal and a corporation failed to physically affix its corporate seal as called for in the attestation clause, the seal of the individual made the document an instrument under seal enforceable against the corporation. *McNulty v. Medical Serv. of District of Columbia, Inc.,* 176 A.2d 783, 784 (D.C.1962).

On the basis of the forgoing, we are compelled to hold that the proprietary lease here

was a sealed instrument and that the twelve year statute of limitations is applicable.

*Reversed and Remanded.*[3]

---

3. We decline Hampshire Gardens' footnoted invitation to affirm on the alternate basis of our recent decision in *Kelley v. Broadmoor Coop. Apartments,* 676 A.2d 453 (D.C.1996) (rejecting challenge to Board of Director's imposition of restrictions on co-operative owner's right to sublet) as this issue was not fully briefed either here or below, and we do not have the entire record before us at this time.