**WINSTON MURRAY,
et al., Appellants,**

**v.**

**WELLS FARGO HOME MORTGAGE,
et al., Appellees.**

**No. 06–CV–1383.**

District of Columbia Court of Appeals.

Argued March 6, 2008.

Decided July 17, 2008.

Frederic W. Schwartz, Jr., Washington, for appellants.

Gary C. Tepper for appellees Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc., and G.E. Capital Mortgage Services, Inc.

Elias G. Saboura–Polkovotsy, Hanover, MD, with whom Matthew A. Ranck was on the brief, for appellees Jeffrey B. Fisher,

Martin S. Goldberg, and the Fisher Law Group, LLC.

Before REID and KRAMER, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

The owners of a residential property, along with the daughter of one of the owners, brought suit against the mortgagee of the property, the mortgagee's sub-servicing agent, and the substitute foreclosure trustees in connection with the initiation of foreclosure proceedings against the owners in 2002. In the complaint, the owners also included a claim against the mortgagee in connection with a 1999 settlement agreement reached after an earlier foreclosure proceeding brought in 1996. The complaint alleged breach of contract, breach of the duty of good faith and fair dealing, violation of the D.C. Consumer Protection Act, breach of fiduciary duty by the foreclosure trustees, and tortious interference with contract. The trial court either dismissed or granted summary judgment in favor of the defendants with respect to all claims and the owners and the daughter have appealed from all the judgments entered against them. In addition, their attorney appeals from the trial court's assessment of attorneys' fees against him. We affirm.

### I.

Winston Murray and Naomi Smith ("owners"), owned property located at 1602 Webster Street, N.W. in Washington, D.C. ("the property"). The deed for the property was recorded on December 2, 1994. GE Capital Mortgage Services was the mortgagee of the property and also the servicing agent for the owners' mortgage. Wells Fargo Home Mortgage, Inc. sub-serviced the loan on behalf of GE Capital Mortgage Services. In July 1996, GE Capital instituted foreclosure proceedings against the owners and sold the property. In September of 1996, the owners brought suit against GE Capital alleging wrongful foreclosure and other claims. The owners maintain that they entered into a settlement agreement with GE Capital in July of 1999 in that action that had the effect of restoring the property to them and also required GE Capital to notify credit agencies and other lenders that "the prior foreclosure respecting the property was begun in error" and that the owners have satisfactorily resolved any financial "delinquencies." In their complaint here, the owners contend that GE Capital failed to advise credit reporting agencies that it foreclosed in error.

In May 2002, Wells Fargo attempted to foreclose against the owners. Attorneys Jeffrey Fisher and Martin Goldberg, and the Fisher Law Group, L.L.C. (hereinafter "foreclosure trustees"), served as foreclosure trustees and instituted the foreclosure. The owners contend that the foreclosure was wrongful because the notice of foreclosure overstated the statutory cure amount by "failing to credit the account for payments due and accepted." They also claim that, acting through counsel, they advised Wells Fargo that the statutory cure amount on the notice was incorrect. Furthermore, they claim that Wells Fargo refused to adjust the cure amount or provide an accounting.

Aisha Murray ("Aisha") is the daughter of Winston Murray, one of the owners of the property. The owners claim that Aisha was their agent for the purpose of making mortgage payments to GE Capital and that she was the beneficiary of an agreement between them that allowed her to live in the property. They also contend the agreement contained a provision allowing the owners to transfer the property to Aisha at a time of her choosing, when she deemed market conditions to be favorable.

With the aim of postponing the foreclosure, Aisha claims that she advised Wells Fargo and the foreclosure trustees that she intended to purchase the property. She further contends that Wells Fargo and the trustees would only agree to postpone the foreclosure sale "under terms so onerous and impractical as to make their satisfaction virtually impossible in the time permitted." The foreclosure sale did not take place because the owners sold the property to Aisha and paid off the mortgage. Aisha claims that as a result of the actions of GE Capital, Wells Fargo, and the foreclosure trustees, she purchased the property on extremely unfavorable terms. Specifically, she contends that the refusal to postpone the foreclosure sale or adjust the statutory cure amount on the part of GE Capital, Wells Fargo, and the foreclosure trustees required her to: obtain financing at an unfavorable interest rate; expeditiously make expensive repairs to the property at the insistence of her financing bank; and pay tax on the transfer even though the transaction could have been tax free.

Winston Murray, Naomi Smith, and Aisha Murray ("plaintiffs") brought suit against GE Capital, Wells Fargo, and the foreclosure trustees ("defendants") in Superior Court on June 6, 2005. The five-count complaint alleged: (1) breach of contract against GE Capital; (2) breach of good faith and fair dealing against GE Capital and Wells Fargo Home Mortgage; (3) violation of the D.C. Consumer Protection Act against all defendants; (4) breach of fiduciary duty against the foreclosure trustees; and (5) tortious interference with contract against all defendants. In October 2005, plaintiffs filed a first amended complaint.

Wells Fargo and GE Capital filed a motion to dismiss the complaint and the foreclosure trustees filed a motion to dismiss, or in the alternative, for summary judgment. Plaintiffs did not respond to any of the motions and the trial court entered orders of dismissal. Plaintiffs subsequently moved for reconsideration after which the trial court vacated the orders of dismissal and awarded attorneys' fees to the defendants to be paid by plaintiffs' counsel. Defendants then re-filed their motions.

In an order dated July 20, 2006, the trial court granted in part and denied in part defendants' motions. It granted summary judgment in favor of GE Capital and Wells Fargo on the breach of contract claim (Count 1), ruling that the claim was barred by the applicable statute of limitations. The court also granted GE Capital and Wells Fargo's motions for summary judgment on the good faith and fair dealing claim (Count 2), relying again on the statute of limitations. The trial court dismissed plaintiffs' D.C. Consumer Protection Act claim (Count 3) against all three defendants for failure to state a claim on which relief could be granted. It ruled that the Consumer Protection Act did not apply to the transaction at issue in this case. The trial court also dismissed the tortious interference with contract claim (Count 5) against all three defendants on the ground that plaintiffs failed to state a claim on which relief could be granted. On the breach of fiduciary duty claim (Count 4), the trial court dismissed Aisha Murray's claim against the foreclosure trustees, but declined to dismiss the owners' claims. The foreclosure trustees then moved for clarification and on October 12, 2006, the trial court entered summary judgment in their favor against all plaintiffs on the breach of fiduciary duty claim "for the reasons set forth" in the foreclosure trustees' motion. These appeals followed.

**II.**

On appeal, appellants contend that: (1) their claims against GE Capital based on

the settlement agreement are not barred by the statute of limitations; (2) their breach of duty of good faith and fair dealing claims against Wells Fargo and the foreclosure trustees are not barred by the statute of limitations; (3) their claims against Wells Fargo and the foreclosure trustees are covered by the D.C. Consumer Protection Act; (4) the trial court erred in dismissing their breach of fiduciary duty claim against the foreclosure trustees because their complaint identified sufficient facts to state a claim; (5) the trial court erred in dismissing Aisha Murray's tortious interference with contract claim because even though the property transfer took place, it took place under conditions unfavorable to Murray due to the appellees' actions; and (6) the trial court improperly awarded attorneys' fees to the appellees in connection with their filing motions in opposition to the reinstatement of the complaint.

### A. Standard of Review

 This court reviews a " 'dismissal for failure to state a claim *de novo.'* " *Washkoviak v. Student Loan Mktg. Ass'n,* 900 A.2d 168, 177 (D.C.2006) (quoting *Oparaugo v. Watts,* 884 A.2d 63, 75 (D.C. 2005)). Like the trial court, this court accepts all of the allegations in the complaint as true, and must construe all facts and inferences in favor of the plaintiff. *Atkins v. Industrial Telecomm. Ass'n, Inc.,* 660 A.2d 885, 887 (D.C.1995). For this court, "[t]he only issue on review of a dismissal made pursuant to Rule 12(b)(6) is the legal sufficiency of the complaint[.]" *Aronoff v. Lenkin Co.,* 618 A.2d 669, 684 (D.C.1992). Dismissal for failure to state a claim on which relief can be granted is "impermissible 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Owens v. Tiber Island Condo. Ass'n,* 373 A.2d 890, 893

(D.C.1977) (quoting *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In addition, a complaint should not be dismissed because a court does not believe that a plaintiff will prevail on her claim. *Duncan v. Children's Nat'l Med. Ctr.,* 702 A.2d 207, 210 (D.C.1997).

 When the trial court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]" a summary judgment motion should be granted. *Woodland v. District Council 20,* 777 A.2d 795, 798 (D.C.2001). "This court applies 'the same substantive standard as the trial court' and 'conduct[s] an independent review of the record.' " *Television Capital Corp. of Mobile v. Paxson Commc'ns Corp.,* 894 A.2d 461, 466 (D.C. 2006) (internal citation omitted).

### B. Appellants' Individual Claims

The plaintiffs' complaint contains five counts, each of which were either dismissed by the trial court or summary judgment was entered. We analyze each count separately below.

### 1. Breach of Contract Claim Against GE Capital

Count one of the complaint alleges that GE Capital breached a 1999 settlement agreement by failing to advise credit reporting agencies that the first foreclosure on the property was mistakenly initiated by GE Capital. The trial court dismissed that claim against GE Capital because the complaint was filed more than three years after the contract at issue was signed. The trial court noted that a three-year statute of limitations generally applies to a breach of contract claim. It also explained that a cause of action for breach of contract accrues when the contract is first breached. As the contract at issue here

did not specify a date for performance, the trial court determined that performance was to take place within a reasonable time. The settlement agreement was executed on July 29, 1999, and appellants filed their complaint on June 6, 2005.

The owners argue, however, that the settlement agreement was a sealed instrument and as a result, their breach of contract claim is subject to a twelve-year statute of limitations. Appellees respond that the three-year statute of limitations applies because the settlement agreement does not meet the requirements for an instrument under seal.

### a. Whether the Agreement is an Instrument Under Seal

The statute of limitations applicable to an action requires that a claim be brought "within a certain period 'from the time the right to maintain the action accrues.'" *Capitol Place I Assocs. L.P. v. George Hyman Const. Co.*, 673 A.2d 194, 198 (D.C. 1996) (quoting D.C.Code § 12–301 (1995)). For a contract-based action, the statute of limitations is ordinarily three years. D.C.Code § 12–301(7) (2001). The statute of limitations for an action brought on an instrument under seal however is twelve years, D.C.Code § 12–301(6) (2001), a period of time from breach to filing well beyond the time that elapsed here. Therefore we must first determine whether the settlement agreement in question here is an instrument under seal.

■ The copy of the settlement agreement presented by the owners includes the signatures of Winston Murray and Naomi Smith, but it does not include the signature of any representative of GE Capital.[1] At the top of the signature page for Mur-

ray, there is a recitation that: "IN WITNESS WHEREOF, we have hereunto set our hands and seal[.]" However, the word seal is not found next to the signatures of either Murray or Smith. In fact, outside of the entry recited above, the word seal is found nowhere on the Murray and Smith signature pages. Below the signatures of Murray and Smith, two different notaries public certify that the signer has appeared before them and executed the document and both notaries have affixed their stamps.[2]

■ "Courts have been reluctant to declare a document to be sealed in the absence of evidence that the parties intended it to be under seal." *Huntley v. Bortolussi*, 667 A.2d 1362, 1365 (D.C.1995). *See also President and Dirs. of Georgetown Coll. v. Madden*, 505 F.Supp. 557, 585 (D.Md.1980) (explaining that "[a] sealed instrument is not created by accident" and "the intent of the parties is what controls.") While such evidence may well be dispositive, a party is not required to provide extrinsic evidence to prove their intent to create a sealed instrument. *Burgess v. Square 3324 Hampshire Gardens Apartments, Inc.*, 691 A.2d 1153, 1156 (D.C.1997). Instead, "a proper determination of whether a document is under seal is limited in the first instance to an examination of the face of the document itself." *Id.* The prevailing view is that "the seal may consist of any substance affixed to the document or the use of an impression such as that customarily used by notaries and corporations, or the use of any other mark, work, symbol, scrawl, or sign intended to operate as a seal." 1 WILLISTON ON CONTRACTS § 2:4 (2007).

---

1. GE Capital does not claim that it was not a party to the settlement agreement; however, neither party was able to provide a copy with a GE Capital representative's signature.

2. Murray's signature was affixed on September 27, 1999, in Trinidad and Tobago. Smith's signature was affixed on September 29, 1999, in California.

When the instrument is made by an individual, the word "seal" next to the signature is "standing alone, sufficient to create a sealed instrument entitled to the twelve-year statute of limitations." *Burgess, supra,* 691 A.2d at 1156–57. *See also Phillips v. A & C Adjusters, Inc.,* 213 A.2d 586, 586–87 (D.C.1965). To that end, we have said that the presence of the word "seal," in parentheses, and opposite the signature " 'undoubtedly evinces an intention to make the instrument a sealed instrument[.]' " *Burgess, supra,* 691 A.2d at 1156 (quoting *Harrod v. Kelly Adjustment Co.,* 179 A.2d 431, 432 (D.C.1962)). Here, neither the signature of Murray nor Smith included the word seal next to it. Moreover, the inclusion of language in a contract such as "witness my hand and seal" is not, standing alone, enough to make a contract an instrument under seal. Such language, "in the absence of a seal, does not operate to make the instrument one under seal. It is the attachment or adoption of a seal that is the operative fact." *Vaccaro v. Andresen,* 201 A.2d 26, 28 (D.C. 1964). Where, however, the word seal appears on the instrument opposite the signature, "the words 'witness my hand and seal' lend added and conclusive force of an intention to make a sealed contract[.]" *Harrod, supra,* 179 A.2d at 432.

As indicated by *Vaccaro,* a party to a contract "may adopt the seal of another as his own[.]" *McNulty v. Med. Serv. of District of Columbia,* 176 A.2d 783, 784 (D.C.1962). There is no required procedure that one must complete to adopt a seal. 78A C.J.S. *Seals* § 5 (1995). "[W]hen one party signs an instrument to which another has affixed his seal, there is a presumption that he has adopted that seal." *McNulty, supra,* 176 A.2d at 784. But, "the adoption by an individual of a seal printed on a document which he signs is largely a matter of intention." 78A C.J.S. *Seals* § 5 (1995).

Based on these authorities and the circumstances presented, we conclude the settlement agreement is not an instrument under seal. As *Huntley* indicates, we must determine whether the parties intended to create a sealed instrument. 667 A.2d at 1365. In this case, the "body of the contract here in question makes no recital to the effect that the contract is under seal." *Madden, supra,* 505 F.Supp. at 587. While *Madden* is not controlling authority, we think the absence of language in the body of the contract suggesting that the document is an instrument under seal is a relevant consideration in our effort to determine the intent of the parties. Although the language "witness our hand and seal" is included on Murray's signature page, such a recitation by itself is not enough to make the instrument under seal. *See Vaccaro, supra,* 201 A.2d at 28. More importantly, the owners did not include the word "seal" next to their signatures or anywhere else in the document. As we said above, placing "seal" next to the signatures is sufficient by itself to create a sealed instrument.

At oral argument, counsel argued that the owners adopted the seals of the notaries public as their own.[3] *McNulty* makes clear that a contractee can create a sealed instrument by adopting the seal of another as his own. 176 A.2d at 784. Moreover, a party may adopt as his seal "any other mark ... intended to operate

---

3. Although appellants did not make this argument in their appellate briefs, they made this argument before the trial court in their reply to GE Capital and Wells Fargo's opposition to plaintiff's motion to vacate. *See Ramos v.* *United States,* 569 A.2d 158, 162 n. 5 (D.C. 1990) (this court ordinarily does not consider arguments a party raises at oral argument but does not make in her brief).

as a seal." 1 WILLISTON ON CONTRACTS § 2:4 (2007). The question of whether a party adopts as his own a seal that is on a document he signs is resolved by determining the intent of the party. 78A C.J.S. *Seals* § 5 (1995). Here, there is no indication that the owners intended to adopt the notary stamps as their seals. Indeed their signatures were affixed before the notary seals were placed on the document. The language above the notary stamps certifies that Murray and Smith each signed the agreement in front of a notary public, but it suggests nothing further. Thus, there is insufficient indication that the owners intended to adopt the seals of the notaries as their own.

▮ Nor is there any indication that GE Capital intended that the contract be one under seal that would bind it to a twelve-year statute of limitations. As noted earlier, the copy of the settlement agreement before the trial court and this court includes no signature and no seal on behalf of GE Capital. There is no requirement that "there be as many seals as signatures to an instrument." *McNulty, supra*, 176 A.2d at 784. In fact, "one seal attached to an instrument could be the seal of each and all if they so *intended* to adopt it." 3 CORBIN ON CONTRACTS § 10.3 (1996) (emphasis added). However, in cases where a contract does not include language "tending to show that all the signers executed it under seal, the mere fact that a signature to which no seal is affixed follows a signature which itself is sealed is not conclusive evidence that the subsequent signers adopted the prior seal." 1 WILLISTON ON CONTRACTS § 2:5 (2007).

Furthermore, when the first signer adds his signature to an instrument and subsequent signers add their signatures and seals, "it was early held that the court cannot presume that the first signer adopted the later affixed seals." 3 CORBIN ON CONTRACTS § 10.3 (1996). GE Capital does not dispute that it executed the settlement agreement; however, there is no assertion when, or under what circumstances it did so. In short, there is nothing in the record that would allow the trial court to determine the order in which the settlement agreement was signed. Indeed there is no claim that GE Capital signed the settlement agreement after Murray and Smith both signed the agreement and the notaries affixed their stamps or that the signer for GE Capital even saw the owners' signatures before signing. As such, this case can be distinguished from the circumstances described in *McNulty, supra*, 176 A.2d at 784, where one party signed an agreement and affixed his seal, and, it was assumed that the second signer intended to adopt the seal of the first.

In sum, we hold that the settlement agreement is a simple contract and not a sealed instrument because the word seal does not appear opposite the owners' signatures, there is no clause in the body of the contract indicating the parties' intent to create a sealed instrument, and there is no indication that the owners intended to adopt the notary stamps as their seals. Nor is there any claim that GE Capital intended the document to be one under seal.

b. Application of the Three–Year Statute of Limitations

Because we have concluded that the settlement agreement does not meet the requirements for an instrument under seal, our next step is to determine whether appellants' breach of contract claim is barred by the three-year statute of limitations applicable to a breach of contract action. We are satisfied that it is so barred.

▮ "A cause of action for breach of contract accrues, and the statute of

limitations begins to run, at the time of the breach[.]" *Eastbanc, Inc. v. Georgetown Park Assoc. Ii, L.P.,* 940 A.2d 996, 1004 (D.C.2008) (internal citation omitted). *See also Bembery v. District of Columbia,* 758 A.2d 518, 520 (D.C.2000); and *Capitol Place, supra,* 673 A.2d at 198. "A contract is breached if a party fails to perform when performance is due." *Eastbanc, supra,* 940 A.2d at 1004 (citing 9 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 943 (interim ed.2002)). *See also* 8 CORBIN ON CONTRACTS § 30.13 (1999) ("Breach of contract is always the non-performance of some duty created by a promise.") Here, appellants claim that GE Capital failed to advise credit reporting agencies that the foreclosure was mistakenly commenced, as required by the settlement agreement. However, the agreement does not require that GE complete its reporting obligation within a specified time frame. When a contract fails to specify a time for the performance of an act, "the law implies that it must be done within a reasonable time." *Independence Mgmt. Co., Inc. v. Anderson & Summers, LLC,* 874 A.2d 862, 869 (D.C.2005) (internal citation omitted).

■ The owners and Aisha Murray brought this action against GE five years and ten months after signing the settlement agreement. Thus, for appellants' claim to be within the statute of limitations, we would have to hold that two years and ten months was a reasonable time for GE to complete its performance under the settlement agreement. What constitutes a reasonable time for performance depends on the circumstances of each case. *Drazin v. American Oil Co.,* 395 A.2d 32, 35 (D.C.1978). GE argues that it was required to perform its reporting obligation during the year 1999. The owners have expressed no view as to when performance was required by GE, however,

relying entirely on their argument that the contract is an instrument under seal.

■ When a foreclosure appears on a consumer's credit report, that individual will often experience severe financial difficulties as a result. *See, e.g., EMC Mortgage Corp. v. Jones,* 252 S.W.3d 857, 873 (Tex.App.2008) (appellee was denied home refinance loan because an erroneous foreclosure appeared on his credit report); *Harmon v. Regions Bank,* 961 So.2d 693, 696 (Miss.2007) (appellant was denied a business loan because an erroneous foreclosure appeared on her credit report); and *Cairns v. GMAC Mortgage Corp.,* No. CIV 04–1840–PHX–SMM, 2007 WL 735564, at *1 (D.Ariz. Mar.5, 2007) (plaintiffs were denied credit to buy a car after their credit report showed a foreclosure stemming from a debt that had been discharged by bankruptcy). We cannot, and need not, say with specificity what constitutes a reasonable time to inform the credit agencies. We are satisfied, however, that given the serious consequences that can result when a foreclosure appears on a consumer credit report, that it would not have been reasonable for GE to wait as long as two years and ten months before completing its reporting obligations. Therefore, we conclude that the breach occurred at an earlier time. Accordingly, we hold that appellants breach of contract action is barred by the three-year statute of limitations.

## 2. Breach of Duty of Good Faith and Fair Dealing Claims Against GE Capital and Wells Fargo

The second count of the complaint alleges that GE Capital and Wells Fargo breached the duty of good faith and fair dealing by: "the premature institution of foreclosure proceedings[;]" "the improper statutory cure amount[;]" and "the refusal to correct the statutory cure amount and

... postpone on reasonable terms the foreclosure sale[.]" The trial court dismissed this count because appellants' complaint was filed more than three years after the date of the notice of foreclosure. Relying on cases cited by appellees, the trial court treated plaintiffs' claim of a breach of the duty of good faith and fair dealing as a breach of contract claim to which a three-year statute of limitations applied. It determined that the contract was breached when the notice of foreclosure was issued on May 22, 2002, a date more then three years before the complaint was filed. The owners argue however, that the notice of foreclosure did not trigger the statute of limitations because they were not injured at that time. They contend that the filing of the notice of foreclosure was an error that could be easily corrected and that they were injured "following June 4, 2002," presumably when they learned that the mortgagee would not change the cure amount.

 We have held that "all contracts contain an implied duty of good faith and fair dealing[.]" *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C.2006) (internal citation omitted). This duty means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (internal citation omitted). In addition, a party to a contract may be liable for a breach of the duty of good faith and fair dealing if the party "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party[.]" *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C.2000). A three-year statute of limitations applies to actions on a contract that is "express or implied[.]" D.C.Code § 12–301(7) (2001). The statute of limitations begins to run at the time the contract is breached. *Eastbanc, supra,*

940 A.2d at 1004. Thus, the claim at issue here accrued, and the statute of limitations began to run, when the implied duty of good faith and fair dealing was breached.

 Appellants contend that we should apply the discovery rule to determine when their cause of action accrued. We have held that "[w]here the fact of an injury can be readily determined, a claim accrues at the time that the plaintiff suffers the alleged injury." *Hendel v. World Plan Executive Council,* 705 A.2d 656, 660 (D.C.1997). We apply the discovery rule to determine when a cause of action accrues, however, in cases "where the relationship between the fact of injury and the alleged tortious conduct is obscure when the injury occurs[.]" *Bussineau v. President and Dirs. of Georgetown Coll.,* 518 A.2d 423, 425 (D.C.1986). Under the discovery rule, a plaintiff's cause of action accrues when the plaintiff " 'knows' or 'by the exercise of reasonable diligence should know (1) of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing.' " *Hendel, supra,* 705 A.2d at 660–61 (quoting *Bussineau, supra,* 518 A.2d at 435). However, even under the discovery rule, "any 'appreciable and actual harm flowing from the [defendant's] conduct' is sufficient" for a cause of action to accrue. *Id.* at 661 (internal citation omitted). Moreover, " '[i]t is not necessary that all or even the greater part of the damages ... occur before the [right] of action arises.' " *Id.* (internal citation omitted).

 Any breach of the duty of good faith and fair dealing arising from the conduct described by the owners and Aisha Murray—premature institution of foreclosure, listing the incorrect cure amount, and refusing to correct the cure amount and postpone the sale—took place at the time the notice of foreclosure was issued. District of Columbia law requires that the holder of a note secured by a

mortgage provide a real property owner with written notice of foreclosure at least thirty days in advance of a foreclosure sale. D.C.Code § 42–815(b) (2001). Thus, the institution of foreclosure begins with the issuance of notice to the property owner. In addition, the cure amount that is claimed to be improper is listed on the notice of foreclosure. The sequence of events in this case also confirms that any appreciable harm suffered by the owners and Aisha Murray was caused by the commencement of foreclosure proceedings. After the notice of foreclosure was issued, Aisha purchased the property from the owners. No foreclosure sale took place after the notice of foreclosure was issued, on May 22, 2002.

Courts in other jurisdictions have also held that the running of the statute of limitations begins with the filing of the foreclosure notice. In *Brown v. King*, 166 N.C.App. 267, 601 S.E.2d 296 (2004), an elderly homeowner brought suit against her caregiver alleging that the caregiver breached her fiduciary duty by mortgaging the homeowner's property to secure a business loan. The caregiver argued that the homeowner's claim was barred by the applicable three-year statute of limitations as the transactions identified as fraudulent took place in 1995 and the homeowner did not file her cause of action until 2001. *Id.* at 297–98. The court disagreed, because the plaintiff "offered evidence that she did not learn of [the fraudulent transactions] until she was served with the notice of foreclosure[.]" *Id.* at 298. Thus, for statute of limitations purposes, a cause of action accrued at that time.

A California court reached the same conclusion in *Engstrom v. Kallins*, 49 Cal. App.4th 773, 56 Cal.Rptr.2d 842, 848–49

(1996), where a cosigner of a note and deed of trust alleged that she was not given the notice required by statute for the trust to exercise its power of sale, and in response, the trust argued that the cosigner's claim was barred by the statute of limitations. The trust argued that the claim accrued at the time it failed to give her the required notice while the cosigner contended that the statute of limitations started to run when the trust attempted to enforce its security interest. *Id.* at 848. The court agreed with the cosigner, explaining that "[e]ven before any foreclosure sale, a cosigner, acting to protect his interest, would necessarily incur various expenses in an effort to preserve his interest. Thus, the harm to the co-signer occurs when the creditor acts to enforce its security interest . . . by instituting foreclosure proceedings." *Id.* at 849.

In this case, the conduct that the owners and Aisha Murray describe as breaching the duty of good faith and fair dealing coincides with the issuance of the notice of foreclosure. They do not dispute that they received the notice of foreclosure and no foreclosure sale ultimately took place. They filed their complaint more than three years after the notice of foreclosure was issued. Therefore, we affirm the trial court's ruling that their claim of the breach of the duty of good faith and fair dealing is barred by the statute of limitations.

### 3. Violation of the D.C. Consumer Protection Act

Appellants also contend that GE Capital, Wells Fargo, and the foreclosure trustees violated the D.C. Consumer Protection Act,[4] " § 28–301, D.C.Code, *et*

---

4. The D.C. Consumer Protection Act appears in Chapter 38 of Title 28 of the D.C.Code. The Consumer Protection Act "applies to actions

to enforce rights arising from a consumer credit sale or a direct installment loan." D.C.Code § 28–3801 (2001). The coverage of

*seq.*" by: "the premature institution of foreclosure proceedings[;]" "the improper statutory cure amount[;]" and "the refusal to correct the statutory cure amount and ... postpone on reasonable terms the foreclosure sale[.]" The trial court dismissed appellants' Consumer Protection Act claim against all appellees[5] on the grounds that appellants failed to state a claim on which relief could be granted. In their complaint, appellants alleged a violation of D.C.Code " § 28–3801, *et seq.*" The trial court agreed with the foreclosure trustees that the mortgage at issue was outside the scope of the statutory sections cited because it was for the sale of real estate worth over $25,000. Appellants now argue that the Superior Court misapprehended their complaint and they assert that their case falls under a section of the Consumer Protection Procedures Act,[6] D.C.Code § 28–3901 (2001), that they did not cite in their complaint. While appellees argue here that the trial court correctly dismissed for failure to state a claim on which relief could be granted,[7] they also argue that appellants' Consumer Protection Act claim is barred by the statute of limitations. We agree with the latter contention.

D.C.Code § 12–301(8) (2001) provides that a three-year statute of limitations applies when no other period of limitation is specified for an action. No statute of limitations is specified for actions brought under the D.C. Consumer Protection Act, D.C.Code §§ 28–3801–3819, and so the residual three-year statute of limitations applies. Furthermore, this court has held that the three-year residual statute of limitations applies to claims brought under the Consumer Protections Procedure Act. *District Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 729 (D.C.2003). *See also* D.C.Code § 28–3905(a) (2001) (explaining that for actions brought pursuant to the Consumer Protections Procedure Act, the statute of limitations prescribed by D.C.Code § 12–301 is tolled by the filing of a complaint with the District of Columbia Department of Consumer and Regulatory Affairs). A plaintiff must bring an action based on the Consumer Protection Procedures Act within three years "from the time the right to maintain the action accrues[.]" D.C.Code § 12–301.

Appellants have argued, as indicated in our own discussion of count 2

the D.C. Consumer Protection Act is "limited by its terms" to actions pertaining to consumer credit sales or direct installment loans. *Sterling Mirror of Maryland, Inc. v. Gordon*, 619 A.2d 64, 67 (D.C.1993).

5. Appellants now claim that their complaint only made this allegation against Wells Fargo and the foreclosure trustees.

6. The D.C. Consumer Protection Procedures Act appears in Chapter 39 of Title 28 of the D.C.Code. The Consumer Protection Procedures Act "prohibit[s] a long list of 'unlawful trade practices[.]'" *DeBerry v. First Gov't Mortgage & Investors Corp.*, 743 A.2d 699, 700 (D.C.1999) (internal citation omitted). One of the purposes of the Consumer Protection Procedures Act is "to assure that a just mechanism exists to remedy all improper trade

practices and deter the continuing use of such practices[.]" D.C.Code § 28–3901(b)(1) (2001). Thus, the coverage of the Consumer Protection Procedures Act is much broader than that of the Consumer Protection Act.

7. The foreclosure trustees argue that the statutory sections included within appellants' citation to D.C.Code § 28–3801, *et seq.* are not applicable to the mortgage transaction at issue in this case, and that as a result, this count of the complaint fails to state a claim on which relief can be granted. Because we affirm the trial court's dismissal of this count of the complaint on another ground, we do not address this argument. *See Obelisk Corp. v. Riggs Nat'l Bank of Washington, D.C.*, 668 A.2d 847, 852 (D.C.1995) (this court may affirm a ruling for reasons other than those relied upon by the trial court).

above, that their causes of action against Wells Fargo and the foreclosure trustees did not accrue at the time the notice of foreclosure was issued because they had not yet suffered injuries or damages. As we observed above in rejecting that argument, "[w]here the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C.1994) (en banc). *See also News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C.2005) (explaining that a cause of action accrues "when its elements are present, so that the plaintiff could maintain a successful suit."). Thus, we held that the breach of good faith and fair dealing claim, as set forth in count 2, was also barred by the three-year statute of limitations. The factual allegations that are the basis of that claim—premature institution of foreclosure, listing the incorrect statutory cure amount, refusing to correct the cure amount, and refusing to postpone the foreclosure sale—also underlie the claimed violation of the Consumer Protection Act. As such, appellants' Consumer Protection Act claim could have been brought at the time the notice of foreclosure was issued. According to the complaint, the trustees instituted foreclosure proceedings on May 22, 2002 and thus appellants were required to file suit by May 23, 2005.[8] The complaint, however, was not filed until June 6, 2005, and thus their Consumer Protection Act claim is barred by the three-year statute of limitations. Therefore, we affirm the trial court's dismissal of the D.C. Consumer Protection Act count.

### 4. Breach of Fiduciary Duty

In count four of their complaint, appellants allege that the foreclosure trustees violated their fiduciary duties by prematurely initiating foreclosure proceedings, listing the improper statutory cure amount in the notice of foreclosure, and refusing to "correct or account for" the improper cure amount or postpone the foreclosure sale. In its order of July 20, 2006, the trial court declined to dismiss the breach of fiduciary duty claim on statute of limitations grounds because it concluded that the claim met the definition of a "continuing tort." On October 12, 2006, however, the trial court entered summary judgment against appellants on this claim "for the reasons stated in defendants' submissions." In its submission, the foreclosure trustees contended that the complaint failed to state a claim upon which relief could be granted. In particular, they argued that the owners did not identify any fiduciary duties prescribed by the deed of trust or foreclosure statutes that had been violated by the trustees. The owners claim in their brief that the breach of fiduciary duty count was sufficient to survive dismissal as it identified: the parties involved and their relationships; the relevant facts; the claimed breach of fiduciary duty; and the requested relief.

D.C.Code § 42–815 (2001) governs mortgage foreclosure sales and § 42–815.01 sets forth the procedure for a mortgagor to cure a default on a residential mortgage. "[A] trustee under a deed of trust owes fiduciary duties both to the noteholder and to the borrower." *Perry v. Virginia Mortgage and Investment Co., Inc.*, 412 A.2d 1194, 1197 (D.C.1980) (internal citation omitted). "Substitute trustees under a deed of trust have, of course, a fiduciary relationship with both the lender and the borrower." *Basiliko v. Pargo Corp.*, 532 A.2d 1346, 1349 n. 3 (D.C.1987). "[A]s a general proposition, trustees of

---

**8.** May 22, 2005 was a Sunday, and so the last day for appellants to file was May 23, 2005.

deeds have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia." *Perry,* 412 A.2d at 1197. When a trustee serves both as an officer and attorney for the noteholder, he has conflicting interests that "'require him to bear the burden of proving that he has been faithful to his trust.'" *Id.* (quoting *Sheridan v. Perpetual Bldg. Ass'n,* 112 U.S.App. D.C. 82, 84, 299 F.2d 463, 465 (1962) (en banc)). The *Perry* court held that in the absence of fraud, misrepresentation, over-reaching, or self-dealing, trustees are not subject to any general fiduciary duties beyond those already required by law. *Id.* at 1198.

 Appellants contend that the foreclosure trustees violated their fiduciary duty through the premature institution of foreclosure proceedings, listing the improper statutory cure amount in the notice of foreclosure, refusing to correct or account for the statutory cure amount, and refusing to postpone the foreclosure sale. Furthermore, in their opposition to the trustees' motion for clarification, they contend that the trustees "had a duty to request from the creditors substantiation for their request to foreclose." As our decision in *Perry* illustrates, for the owners to state a claim for breach of fiduciary duty upon which relief could be granted, it was necessary for them to allege some action on the part of the foreclosure trustees that violated a duty conferred on the trustees by the trust instrument or the foreclosure statute. This they have not done. Moreover, the owners do not allege that the foreclosure trustees committed any fraud, misrepresentation, self-dealing, or over-reaching. Summary judgment is proper where, as a matter of law, a party cannot prevail on her complaint. *Vines v. Manufacturers & Traders Trust Co.,* 935 A.2d 1078, 1085 (D.C.2007). Here, the trial court correctly granted summary judgment because as a matter of law, the allegations in appellants' complaint are insufficient to prevail on their claim of a breach of fiduciary duty by the foreclosure trustees.

## 5. Tortious Interference with Contract

The plaintiffs' final allegation—made in the fifth count of the complaint—is that GE Capital, Wells Fargo, and the foreclosure trustees tortiously interfered with the contract between the owners and Aisha Murray to transfer the property by "the premature institution of foreclosure proceedings[;]" "the improper statutory cure amount[;]" and "the refusal to correct the statutory cure amount and ... postpone on reasonable terms the foreclosure sale[.]" The trial court dismissed this claim against all the defendants because it concluded that appellants failed to state a claim on which relief could be granted. It ruled that there was no breach of the contract at issue because the property was actually transferred to Murray. We are satisfied that the trial court did not err in so ruling.

 To prevail on a claim of tortious interference with contract, a plaintiff must establish: "(1) the existence of a contract, (2) defendant's knowledge of the contract, (3) defendant's intentional procurement of the contract's breach, and (4) damages resulting from the breach." *Cooke v. Griffiths–Garcia Corp.,* 612 A.2d 1251, 1256 (D.C.1992). The RESTATEMENT explains:

> One who intentionally and *improperly* interferes with the performance of a contract ... between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the

other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.,* 565 A.2d 285, 290 (D.C.1989) (quoting RESTATEMENT (SECOND) OF TORTS § 766 (1979)) (emphasis in original). Unlike in some jurisdictions, courts in the District of Columbia have held that "a breach of contract is an essential element" of the tort. *Edmondson & Gallagher v. Alban Towers Tenants Ass'n,* 310 U.S.App. D.C. 409, 415, 48 F.3d 1260, 1266 (1995). A defendant can avoid liability for tortious interference with contract after the plaintiff establishes a *prima facie* case "if the defendant can establish that his conduct was legally justified or privileged." *Raskauskas v. Temple Realty Co.,* 589 A.2d 17, 27 (D.C.1991) (internal citation omitted). A defendant is "privileged if he acts in order to protect 'a present, existing economic interest.'" *Id.* (quoting *Dresser v. Sunderland Apartments Tenants Ass'n,* 465 A.2d 835, 839 n. 12 (D.C.1983)).

When the trial court dismisses an action pursuant to Super. Ct. Civ. R. 12(b)(6), our task is to examine the "legal sufficiency of the complaint." *Aronoff, supra,* 618 A.2d at 684. In addition, "dismissal under Rule 12(b)(6) is appropriate where the complaint fails to allege the elements of a legally viable claim." *Chamberlain v. American Honda Fin. Corp.,* 931 A.2d 1018, 1023 (D.C.2007). *See also Taylor v. F.D.I.C.,* 328 U.S.App. D.C. 52, 60, 132 F.3d 753, 761 (1997) ("Dismissal under Rule 12(b)(6) is proper when, taking the material allegations of the complaint as admitted, and construing them in plaintiffs' favor, the court finds that the plaintiffs have failed to allege all the material elements of their cause of action.") (citations

omitted). One of the material elements of a tortious interference with contract claim is "the defendant's intentional procurement of the contract's breach[.]" *Cooke, supra,* 612 A.2d at 1256. Here, the tortious interference with contract claim is legally insufficient because plaintiffs did not allege that appellees intended to cause a breach of the contract between the owners and Aisha Murray, and for that reason, the trial court correctly dismissed the claim against all the defendants.

## C. Award of Attorneys' Fees

Finally, appellants' counsel contends that the trial court improperly assessed attorneys' fees against him to compensate the appellees for expenses incurred in connection with their opposition to appellants' motion to vacate the dismissal of their complaint. The trial court granted the motion to vacate the dismissal of appellants' complaint, after appellants failed to respond to appellees' motions to dismiss, on condition that appellants' counsel pay to appellees "the costs and attorney's fees associated with litigating this motion." Ultimately, the court ordered appellants' trial counsel to remit $750 to each set of defendants,[9] recognizing that substantial portions of the fees claimed by the appellees were for work necessary to defend against the merits of the complaint.

This court's review of an award of attorneys' fees in these circumstances " 'is a limited one because disposition of such motions is firmly committed to the informed discretion of the trial court. Therefore, it requires a very strong showing of abuse of discretion to set aside the decision of the trial court.' " *Lively v. Flexible Packaging Ass'n,* 930 A.2d 984, 988 (D.C.2007)

---

9. Counsel for Wells Fargo and GE Capital initially submitted a bill for $15,540 in fees that was reduced to $2000 by the trial court.

Counsel for the foreclosure trustees submitted a bill for $2588 in fees.

(quoting *Maybin v. Stewart,* 885 A.2d 284, 288 (D.C.2005)). The review is limited to "prevent squabbles over attorneys' fees from blossoming into 'a second major litigation.'" *Lively, supra,* 930 A.2d at 988 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). We have previously held that a sanction of $500 "was a measured response to dilatory conduct and a failure to prosecute by [appellant] that caused the defense to incur unnecessary counsel fees." *Luna v. A.E. Engineering Servs., L.L.C.,* 938 A.2d 744, 746–47 n. 4 (D.C.2007). Here, we cannot say that the award of $750 to each defendant was an abuse of discretion. Consequently, appellant is not entitled to relief on the basis of this argument.

### III.

The order dismissing appellants' claims for breach of contract, breach of the duty of good faith and fair dealing, violation of the D.C. Consumer Protection Act, and tortious interference with contract is affirmed. We also affirm the trial court's order granting summary judgment in favor of the foreclosure trustees on appellants' breach of fiduciary claim and its award of attorneys' fees to appellees.

*So ordered.*