**A. Huda FAROUKI, Appellee**

v.

**PETRA INTERNATIONAL BANKING CORPORATION, et al.,**
**Appellants.**

No. 14–7136.

United States Court of Appeals,
District of Columbia Circuit.

June 2, 2015.

Rehearing En Banc Denied July 14, 2015.

David Clarke, Jr., Esquire, DLA Piper U.S. LLP, Washington, DC, Robert Joseph Mathias, DLA Piper LLP, Baltimore, MD, Grayson Douglas Stratton, DLA Piper LLP, Houston, TX, for Appellee.

Robert M. Disch, John Robert Fornaciari, Baker & Hostetler LLP, Washington, DC, for Appellant.

Before: TATEL and SRINIVASAN, Circuit Judges, and SILBERMAN, Senior Circuit Judge.

***JUDGMENT***

PER CURIAM.

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties and oral argument of counsel. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* Fed. R.App. P. 36; D.C.Cir. R. 36(d). It is hereby

**ORDERED** and **ADJUDGED** that the district court's order filed August 11, 2014, be affirmed.

In 1986, appellee A. Huda Farouki personally guaranteed a $3.7 million loan made by Petra International Banking Corporation to American Export Group International Services, Inc. (AEGIS). AEGIS filed for bankruptcy in 1987, but Petra continued to lend AEGIS additional funds through a series of allonges—*i.e.*, amendments—to the original note. Of particular relevance, Petra and AEGIS entered into an eleventh such allonge in April 1990, adjusting to $10.9 million the total amount owed by AEGIS to Petra. As a result of Petra's collection efforts, Jordanian authorities in 2008 placed a lien on personal property of Farouki's that was located in Jordan.

Farouki sued Petra in district court, seeking a declaratory judgment that he had no obligations under the Guaranty. Petra counterclaimed, seeking to recover under the Guaranty. In 2011, the district court granted Farouki's motion to dismiss Petra's counterclaim as time-barred and *sua sponte* granted summary judgment to Farouki on his request for a declaratory judgment releasing the Guaranty. *Farouki v. Petra Int'l Banking Corp.*, 811 F.Supp.2d 388, 392–93 (D.D.C.2011).

On appeal, we vacated the grant of summary judgment and remanded to afford Petra the opportunity to produce evidence bearing on the potential applicability of a statute of limitations longer than the traditional three-year limitations period for simple contracts. *Farouki v. Petra Int'l Banking Corp.*, 705 F.3d 515, 517 (D.C.Cir. 2013). On remand, Petra received leave to file a second amended counterclaim, a decision Farouki does not appeal. Farouki moved to dismiss the second amended counterclaim as untimely, and Petra in response made two independent arguments for the application of longer statutes of limitations. The district court again granted Farouki's motion to dismiss Pe-

tra's counterclaim as time-barred, and, following briefing from the parties, granted summary judgment on Farouki's request for declaratory judgment. *Farouki v. Petra Int'l Banking Corp.,* 63 F.Supp.3d 84, 88 (D.D.C.2014); *Farouki v. Petra Int'l Banking Corp.,* 968 F.Supp.2d 216, 217 (D.D.C.2013). Petra appeals.

Petra first argues that the longer limitations period reserved for negotiable instruments applies to the Eleventh Allonge. *See* D.C.Code § 28:3–118. The district court rejected Petra's argument, concluding that the Eleventh Allonge was nonnegotiable because it accrued interest at a variable rate. *Farouki,* 63 F.Supp.3d at 86–87. We agree.

When the Guaranty and the Eleventh Allonge were executed, the D.C. Uniform Commercial Code provided that, in order to be considered negotiable, an instrument must have "contain[ed] an unconditional promise or order to pay a sum certain." D.C.Code § 28:3–104(1)(b) (1981). That version of the D.C. U.C.C. further provided that a "sum payable is a sum certain even though ... paid ... with stated interest." *Id.* § 28:3–106(1)(a) (1981). And the official comments to that version of the U.C.C. explained that § 106 "d[id] not make negotiable a note payable with interest at the current rate," *i.e.,* a variable rate. U.C.C. § 3–106 cmt. 1 (1987) (internal quotation marks omitted).

But D.C. amended its version of the U.C.C. in 1995—after both the Guaranty and Eleventh Allonge were executed—to provide that, for purposes of determining negotiability, "[i]nterest may be ... expressed as a fixed *or variable* rate." D.C.Code § 28:3–112(b) (emphasis added). If that understanding governed the Eleventh Allonge even though that allonge was executed years before the 1995 amendment, the Eleventh Allonge would qualify as a negotiable instrument notwithstand-

ing its use of a variable interest rate. Petra argues that the 1995 amendment should be applied retroactively to the Guaranty and Eleventh Allonge. In declining to do so, the district court correctly applied the retroactivity analysis followed by the D.C. Court of Appeals.

First, the D.C. Council did not, in the 1995 amendment, "expressly prescribe[ ] the statute's proper reach." *Holzsager v. D.C. Alcoholic Beverage Control Bd.,* 979 A.2d 52, 56 (D.C.2009) (quoting *Landgraf v. USI Film Prods.,* 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). Application of the amendment to the Guaranty and Eleventh Allonge, moreover, would have had "retroactive effect, *i.e.,* [ ] it would [have] impair[ed] rights a party possessed when he acted, increase[d] a party's liability for past conduct, or impose[d] new duties with respect to transactions already completed." *Id.* at 57 (quoting *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483). At the time the Eleventh Allonge was executed, no D.C. court had analyzed then-existing § 28:3104(1)(b) or § 28:3–106(1)(a) to determine whether a variable interest rate loan was a negotiable instrument. But, in accordance with the official U.C.C. comment prescribing that notes bearing interest at the "current rate" are nonnegotiable, the "majority of [state] courts" to have considered the issue at the time had "declined to hold that notes which contain variable interest rates [were] negotiable instruments." *Amberboy v. Societe de Banque Privee,* 831 S.W.2d 793, 794 (Tex. 1992); *see, e.g., Taylor v. Roeder,* 234 Va. 99, 360 S.E.2d 191, 194–95 (1987); *Farmers Prod. Credit Ass'n v. Arena,* 145 Vt. 20, 481 A.2d 1064, 1065 (1984). It follows that treatment of the Guaranty as nonnegotiable cannot have "upset the reasonable expectations" of the parties. *Holzsager,* 979 A.2d at 57 n. 6 (quoting *Landgraf,* 511 U.S. at 269 n. 24, 114 S.Ct. 1483). The

"traditional presumption" thus counsels that, due to lack of "clear legislative intent," the 1995 amendment "does not govern" the parties' prior conduct—*i.e.,* the execution of the Guaranty in 1986 or the execution of the Eleventh Allonge in 1990. *See id.* at 57 (internal brackets omitted) (quoting *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483).

Petra errs in relying on several cases in which state courts interpreted pre-amendment versions of U.C.C. § 106 to classify variable rate loans as negotiable instruments. Those decisions postdate the 1990 execution of the Eleventh Allonge, and the majority of decisions at that time were to the contrary. Although the decisions relied on by Petra are potentially indicative of the general movement in the law toward negotiability of variable rate instruments, they do not suggest that the parties' "reasonable expectation" in 1990 was that the Guaranty was negotiable. Nor was the 1995 amendment to the D.C. U.C.C. merely "explanatory and clarifying" of existing law, as Petra suggests on appeal. The D.C. Council "did not [in the course of enacting § 28:3–112(b) ] assert that it was clarifying what the earlier legislators meant." *Tippett v. Daly,* 10 A.3d 1123, 1131 (D.C.2010).

For all those reasons, we agree with the district court that the limitations period applicable to negotiable instruments does not apply in this case. And like the district court, we decline to resolve the parties' disagreement as to whether the Guaranty extends to the Eleventh Allonge: the original note's variable interest rate defeats negotiability regardless of whether the Guaranty so extends.

Petra alternately argues that the twelve-year statute of limitations applicable to instruments "under seal" should apply in this case. *See* D.C.Code § 12–301(6). That argument is foreclosed by *Murray v.*

*Wells Fargo Home Mortgage,* 953 A.2d 308 (D.C.2008), in which the D.C. Court of Appeals declined to consider a similar contract as having been executed under seal. As in *Murray,* neither the word "seal" nor any physical seal appears next to Farouki's signature on the Guaranty, and notary stamps were affixed only after the parties had signed the instrument. *Id.* at 318–19. The inclusion of language referencing a seal elsewhere in the document, moreover, "does not operate to make the instrument one under seal," because "[i]t is the attachment or adoption of a seal that is the operative fact." *Id.* at 318. The district court thus correctly found the twelve-year statute of limitations for sealed instruments inapplicable in this case. Without the benefit of the longer-than-usual limitations periods available to either negotiable or sealed instruments, the district court properly found Petra's second amended counterclaim time-barred as a matter of law and Farouki thus entitled to summary judgment.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold the issuance of the mandate herein until seven days after the resolution of any timely petition for rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. R. 41.