[No. B091325. Second Dist., Div. One. Sept. 24, 1996.]

WENDY B. ENGSTROM, Plaintiff and Appellant, v.
JAMES G. KALLINS et al., Defendants and Respondents.

## COUNSEL

Davis & Kahdeman and Richard J. Kahdeman for Plaintiff and Appellant.

Thomas E. McCurnin for Defendants and Respondents.

## OPINION

**ORTEGA, J.**—Wendy B. Engstrom filed the underlying lawsuit following institution of foreclosure proceedings against her real property by a lender acting to enforce its security interest in the property. The trial court sustained without leave to amend the lender's demurrer to Engstrom's first amended complaint. We reverse. We hold that (1) Engstrom sufficiently pled her entitlement to statutory notice from the lender as a cosigner on a consumer credit contract to withstand the lender's demurrer, and (2) because Engstrom did not receive the cosigner notice, her action based on that failure to give notice did not accrue, and the statute of limitations did not begin to run, until the lender initiated foreclosure proceedings.

### BACKGROUND

According to the first amended complaint, Engstrom was the owner of certain multifamily residential real property located in Santa Monica. At her former husband's request, Engstrom signed a trust deed and note encumbering the property in favor of respondent James G. Kallins, M.D., Inc., Profit Sharing Retirement Trust. Engstrom alleged that James and Virginia Kallins were trustees of the Trust. For brevity's sake we refer to the Kallinses and the trust jointly as the "Trust."

We set forth the scenario contained in Engstrom's first amended complaint. Her former husband represented to her, for himself and on behalf of both the Trust and a California-licensed real estate broker, defendant Geovest Austusa Financial (GAF), that the trust deed would not be recorded and that when the loan was closed a replacement trust deed on property owned by her former husband and his then wife would replace the trust deed Engstrom had signed.[1] GAF was agent for both her former husband and her "in connection with the negotiation, arrangement and making of the [loan]."

Engstrom's signatures on the note and trust deed were required by the Trust as a condition of loaning her former husband $165,000. She would not have executed the note and trust deed had she known her husband's representations not to record the trust deed and to replace it with another were

---

[1]GAF is not a party to this appeal.

untrue. She would not have executed the documents had GAF or the Trust disclosed to her material facts regarding the transaction between the Trust and her former husband, including the fact that her signing the trust deed created a lien on her property and made her potentially liable as cosigner.

After signing the note and trust deed, Engstrom was never told the lender's name or if a loan actually was made. The Trust knew she signed the note and trust deed as a cosigner and did not receive any of the money, goods or services from the loan transaction. Engstrom's first cause of action alleged she was never given the cosigner notice required by either Civil Code sections 1799.91[2] or 1799.99.[3] As a result of the Trust's failure to give her notice, the Trust was allegedly prohibited by Civil Code section 1799.95[4] from bringing any action or enforcing the trust deed. Nonetheless, when the note went into default, the Trust exercised the trust deed's power of sale.

In addition to the first cause of action for violation of Civil Code section 1799.91, the first amended complaint alleged claims against the Trust for wrongful foreclosure (2d), slander of title (3d), negligence (4th), and declaratory and injunctive relief (5th). The Trust demurred, asserting all five causes of action were barred by the three-year statute of limitations in Code of Civil Procedure section 338, subdivision (a) and that the Trust was not required to give Engstrom the cosigner notice required by Civil Code section 1799.91. The trial court sustained the demurrer without leave to amend, finding it not reasonably possible that Engstrom could cure the pleading defects. Engstrom appeals from the order of dismissal subsequently entered.

[2] Civil Code section 1799.91, subdivision (a) requires a notice to cosigners of consumer credit contracts: "Unless the persons are married to each other, each creditor who obtains the signature of more than one person on a consumer credit contract shall deliver to each person who does not in fact receive any of the money, property, or services which are the subject matter of the consumer credit contract, prior to that person's becoming obligated on the consumer credit contract, a notice [containing specified provisions addressing consequences of cosigning, including what can happen if the "borrower" does not pay]."

[3] Engstrom pled Civil Code section 1799.99, an analog to Civil Code section 1799.95, as a second statutory basis for her claims. It imposes a similar prohibition on a creditor who fails to provide prescribed notice in certain transactions described in the Code of Federal Regulations. Since we hold that Engstrom sufficiently pled her right to notice under Civil Code section 1799.91, we need not, and do not, address the provisions of Civil Code section 1799.99.

[4] Civil Code section 1799.95 provides: "No action shall be brought, nor shall any security interest be enforced, by any creditor or any assignee of a creditor on any consumer credit contract which fails to comply with this title against any person, however designated, who is entitled to notice under Section 1799.91 and who does not in fact receive any of the money, property or services which are the subject matter of the consumer credit contract. [¶] Nothing herein shall affect the rights of any bona fide purchaser for value of property sold pursuant to the enforcement of a security interest if the purchase was made without notice of any facts constituting a violation of this title."

## DISCUSSION

## I

Engstrom claims the first amended complaint sufficiently pled her entitlement to statutory notice from the Trust as a cosigner on a consumer credit contract, that she was not given any such notice, and, as a result, the Trust was not entitled to foreclose on her property. The Trust contends Engstrom did not and cannot plead her right to the cosigner notice. We hold that Engstrom sufficiently pled the right to cosigner notice to withstand the Trust's demurrer to all five causes of action.[5]

"In examining the sufficiency of the complaint, '[w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citations.] '[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citation.]" (*First Nationwide Savings* v. *Perry* (1992) 11 Cal.App.4th 1657, 1662 [15 Cal.Rptr.2d 173].)

Civil Code section 1799.90 et seq. set out various provisions concerning consumer credit contracts. In pertinent part, Civil Code section 1799.90, subdivision (a)(5), defines "consumer credit contract" as "any of the following obligations to pay money on a deferred payment basis, where the money, property, services or other consideration which is the subject matter of the contract is primarily for personal, family or household purposes: [¶] . . . [¶] (5) Loans . . . for use primarily for personal, family or household purposes where such loans or extensions of credit are subject to the provisions of Article 7 (commencing with Section 10240) of Chapter 3 of Part I of Division 4 of the Business and Professions Code . . . whether secured by real property or otherwise." One who, along with another person

---

[5]As Engstrom explains, and the Trust acknowledged in its moving papers below, although only the first cause of action expressly invoked Civil Code section 1799.91, the four additional causes of action (wrongful foreclosure, slander of title, negligence, and declaratory and injunctive relief) also were grounded on the Trust's failure to give the statutory cosigner notice. Thus, our holding reinstates not only the first cause of action but all five causes of action naming the Trust.

to whom he or she is not married, signs a consumer credit contract but does not receive any of the money, property or services which are the subject of the contract, is entitled to receive from the creditor on the transaction a detailed notice to cosigner. (Civ. Code, § 1799.91.) If the cosigner notice is not given, the creditor may not enforce any resulting security interest. (Civ. Code, § 1799.95.)

Article 7 (Bus. & Prof. Code, § 10240 et seq.),[6] part of the Real Estate Law (§ 10000 et seq.), requires extensive disclosures by a real estate broker when acting as a mortgage broker or lender in connection with real property loans. Among other provisions, article 7 also sets maximums on various broker and lender expenses, charges and interest (§§ 10242, 10242.5, 10242.6), requires specific notice in connection with certain balloon payments (§ 10241.4), addresses creation of a broker's lien (§ 10243) and delimits installment payments (§§ 10244, 10244.1).

The question here is whether the loan transaction described in the first amended complaint is "subject to the provisions of Article 7," as required by Civil Code section 1799.90, subdivision (a)(5). Only if the loan was so subject was Engstrom entitled to the cosigner notice provided for in Civil Code section 1799.91. We conclude the loan was subject to the provisions of article 7.

The Trust argues it was not required to give Engstrom the cosigner notice because (1) under section 10240, subdivision (b), the notice isn't required if the lender (here, the Trust) lends its own funds, and (2) article 7 does not apply when the loan is secured by an apartment building. Both arguments fail.

Section 10240, subdivision (a) of article 7 provides: "Every real estate broker, upon acting within the meaning of subdivision (d) of Section 10131, who negotiates a loan to be secured . . . by a lien on real property shall, within three business days after receipt of a completed written loan application or before the borrower becomes obligated on the note, whichever is earlier, cause to be delivered to the borrower a statement in writing, containing all the information required by Section 10241. It shall be personally signed by the borrower and by the real estate broker negotiating the loan . . . . When so executed, an exact copy thereof shall be delivered to the borrower at the time of its execution. The real estate broker negotiating the loan shall retain on file for a period of four years a true and correct copy of such statement as signed by the borrower. [¶] No real estate licensee shall

---

[6]Undesignated section references in part I of this opinion are to the Business and Professions Code.

permit such statement to be signed by a borrower if any information required by Section 10241 is omitted."[7] The first amended complaint has adequately pled that the broker, GAF, negotiated this loan. Under section 10240, subdivision (a), GAF was required to give notice containing the section 10241 information.

Section 10240, subdivision (b) of article 7 provides: "For the purposes of applying the provisions of this article, a real estate broker is acting within the meaning of subdivision (d) of Section 10131 if he or she solicits borrowers, or causes borrowers to be solicited, through express or implied representations that the broker will act as an agent in arranging a loan, but in fact makes the loan to the borrower from funds belonging to the broker."

The Trust reads subdivision (b) as limiting the coverage of section 10240 to situations where a real estate broker represents that the broker will act as agent "but in fact makes the loan to the borrower from funds belonging to the broker." We, however, read subdivision (b) as broadening the coverage of section 10240 to include not only situations where a real estate broker acts as mortgage broker (subd. (a)), but also where a real estate broker initially offers himself as a mortgage broker but in fact ends up the lender (subd. (b)). In either situation, a broker must give the notice required by section 10240 and set out in section 10241.

We also disagree with the Trust's contention that no notice was required because the property was excluded from full coverage under article 7, and thus the loan was not "subject to the provisions of Article 7." The Trust relies on two article 7 provisions. Section 10240.1 states: "The provisions of this article, exclusive of the provisions of Section 10240, apply only to loans secured by a dwelling." Section 10240.2 defines "dwelling" units as: "(a) A single dwelling unit in a condominium or cooperative. [¶] (b) Any parcel containing only residential buildings if the total number of units on the parcel is four or less."

The first amended complaint describes the buildings on the subject property only as "multi-family residential." The Trust argues that the subject property contained a 13-unit apartment building and therefore the loan was not "subject to the provisions of Article 7." As a result, the argument continues, Engstrom was not entitled to the cosigner notice prescribed by Civil Code section 1799.91.

---

[7]Section 10131, subdivision (d) provides: "A real estate broker . . . is a person who, for a compensation or in expectation of a compensation, regardless of the form or time of payment, does or negotiates to do one or more of the following acts for another or others: [¶] . . . [¶] (d) Solicits borrowers or lenders for or negotiates loans or collects payments or performs services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property or on a business opportunity."

The "fact" that the property included a 13-unit apartment building is not properly before this court. Engstrom did not describe the property as containing a 13-unit apartment building in the first amended complaint. In any event, assuming that the property contained 13 apartment units, a borrower whose loan was secured by that property would still, by the express exclusion of section 10240.1, be entitled to the borrower's notice required by section 10240. Article 7 (in the form of sections 10240 and 10240.1) mandates notice by a real estate broker, acting as a mortgage broker or mortgage lender, even when the building on a property is not a dwelling.

The Trust argues, however, that in order for the Civil Code cosigner notice to be required, a loan must be subject to all of article 7, not just section 10240. The argument is based on the introductory language of Civil Code section 1799.90, defining "consumer credit contracts" as "[l]oans . . . subject to the provisions of Article 7 . . . ." The Trust points to this language and states that, as a result, because article 7 excludes dwellings of more than four units, Engstrom was not entitled to cosigner notice. We disagree with the assertion that "subject to the provisions of Article 7" means all article 7 provisions must apply before a cosigner is entitled to notice on a consumer credit loan. We read the phrase as meaning subject to any provision of article 7.

It would be incongruous to say that when a real estate broker acts as a mortgage broker, although the notice provisions of article 7 specifically apply to that transaction, the transaction is somehow not "subject to the provisions of Article 7."

Under the pertinent Business and Professions Code provisions, the real estate broker/mortgage broker or real estate broker/lender must give the borrower the information required under section 10241. That requirement makes the loan "subject to the provisions of Article 7." Accordingly, under the Civil Code provisions, Engstrom was entitled to cosigner notice and the first five causes of action were sufficient to withstand the Trust's claim that she was not.

## II

The Trust argues Engstrom failed to commence her action within the applicable three-year statute of limitations (Code Civ. Proc., § 338, subd. (a)) because she did not file suit until September 2, 1994, whereas the Trust's failure to give her cosigner notice allegedly occurred on or about

August 13, 1991.[8] On the other hand, Engstrom contends it was the Trust's attempt to enforce its security interest which triggered the running of the statute. We hold that Engstrom commenced this action within the limitations period.

We are dealing here with a statutory scheme which requires creditor notice to a cosigner before the cosigner becomes obligated on the consumer credit contract. (Civ. Code, § 1799.91, subd. (a).)[9] If the creditor does not provide that notice, it may not bring an action on or enforce any security interest on any such contract which did not comply with the statutory requirements against any person entitled to the cosigner notice of section 1799.91 who did not receive any of the money, property or services which were the subject matter of the contract. (§ 1799.95.)

Engstrom's original complaint set forth five causes of action against all defendants: violation of section 1799.91, wrongful foreclosure, slander of title, negligence, and declaratory and injunctive relief. The first amended complaint alleged the same five causes of action against the Trust. In both complaints, Engstrom alleged that numerous times before instituting this lawsuit she or her representative asked the Trust to delay or forebear from exercising its power of sale, to no avail. Engstrom sought damages as to all causes of action and, on the declaratory/injunctive relief claim also asked for a judicial declaration that the Trust was not entitled to foreclose or otherwise enforce any rights under the note and trust deed. She sought an injunction to prevent enforcement of the security.[10] She also sought a declaration and an injunction requiring the Trust to execute documents to eliminate the trust deed as a cloud on title. Thus, Engstrom's claims all were founded on the Trust's failure to give her the cosigner notice she claimed she was due. She sought either to prevent the foreclosure or recover damages for the harm that would occur to her if foreclosure proceeded apace.

According to the first amended complaint, therefore, Engstrom tried repeatedly to convince the Trust not to foreclose after January 1992, when she learned her former husband had defaulted on note payments and the

---

[8]Engstrom apparently concedes the applicability of Code of Civil Procedure section 338, subdivision (a), which provides a three-year statute for "[a]n action upon a liability created by statute, other than a penalty or forfeiture."

[9]Undesignated statutory references in part II of this opinion are to the Civil Code.

The parties interpret section 1799.91, subdivision (a) to require delivery of cosigner notice when the note and trust deed are signed. For purposes of this appeal, we apply that meaning.

[10]Engstrom also sought damages on the fifth cause of action (declaratory/injunctive relief), apparently based in part on her claim of unjust enrichment of the Trust by its enforcement of the note and trust deed. We express no opinion as to whether damages are available.

Trust was going to begin foreclosure proceedings. Unsuccessful in those attempts, she filed this lawsuit in September 1994.[11]

In light of the two-tiered structure of the relevant Civil Code provisions—the first mandating notice, the second denying remedial action to a noncomplying creditor—we reject the notion that Engstrom's claims accrued on the date she was not given cosigner notice.

■ "Generally, a cause of action accrues when, under the substantive law, the wrongful act is done and liability arises, i.e., when a suit may be brought. [Citations.]" (*Menefee* v. *Ostawari* (1991) 228 Cal.App.3d 239, 245 [278 Cal.Rptr. 805].) Under this principle, the defendant's acts determine accrual, and ordinarily the statute will begin to run despite the plaintiff's ignorance of his cause of action or of the wrongdoer's identity. (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 352, p. 381.) However, various exceptions have been made to avoid sometimes unjust consequences of strict adherence to the general rule. One of these exceptions deems accrual to occur when damage results. "[A]lthough a right to recover nominal damages will not trigger the running of the period of limitation, the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period. . . . [N]either uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations." (*Davies* v. *Krasna* (1975) 14 Cal.3d 502, 514 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807].)

■ Thus, when a creditor fails to give the requisite cosigner notice in a real property security transaction under consumer credit contract law, the cosigner would, at that point, have, at most, a cause of action for declaratory and/or injunctive relief (Engstrom's fifth cause of action). No harm to the cosigner would occur so long as the maker of the note continued to make payments. If, however, the maker stopped making payments and the creditor instituted foreclosure proceedings, the cosigner would sustain appreciable harm. Even before any foreclosure sale, a cosigner, acting to protect his interest, would necessarily incur various expenses in an effort to preserve his interest. Thus, the harm to the cosigner occurs when the creditor acts to enforce its security interest (§ 1799.95), in this instance by instituting foreclosure proceedings.[12] According to the first amended complaint, the Trust began foreclosure proceedings sometime after January 1992. Engstrom's initial complaint, filed September 2, 1994, was timely.

---

[11]We note that shortly after filing her original complaint, upon payment of an undertaking, Engstrom obtained a preliminary injunction enjoining the Trust from proceeding to foreclosure until further court order. We are unable to locate in the record any later order specifically mentioning the preliminary injunction.

[12]At oral argument, counsel for the Trust mentioned in passing that Engstrom suffered appreciable harm when the trust deed was recorded because at that point she had a cause of

We address Engstrom's fifth cause of action separately because at first glance it might appear it was not begun within the limitations period. Ordinarily ". . . declaratory relief is available as a remedy in cases involving various rights and obligations, and the governing statute will be the one applicable to an ordinary legal or equitable action based on the same claim. [Citations.] The real question is, when does the statute run? Since the right to declaratory relief may exist prior to any breach of obligation, the typical point of accrual of the cause of action is often lacking. . . . [¶] . . . [¶] . . . [T]he rule seeks to make the same limitation govern the action for declaratory relief and the action for coercive relief; i.e., just as the statute will bar the declaratory remedy when the coercive remedy is barred . . . , so the statute will not bar the declaratory remedy while the coercive remedy remains." (3 Witkin, Cal. Procedure, *supra*, Actions, § 475, pp. 506-507.) As a result, Engstrom's request for a judicial declaration in this case follows with the "coercive" causes of action and was timely filed as well.

## DISPOSITION

The judgment (order of dismissal) is reversed. The matter is remanded to the trial court with directions to enter an order overruling the demurrer. Engstrom is awarded costs on appeal.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.

Respondents' petition for review by the Supreme Court was denied January 22, 1997.

---

action for slander of title. However, "[s]lander of title is a false and unprivileged disparagement, oral or written, of the title to real or personal property, *resulting in actual pecuniary damage*. [Citations.]" (Original italics omitted; new italics added.) (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 569, p. 663.) Counsel did not specify what pecuniary damage Engstrom suffered when the trust deed was recorded. Thus the point suffers the same disability as does the Trust's limitations argument generally.